## EXXON CORPORATION

### v.

## DUVAL COUNTY RANCH COMPANY.

### Civ. A. No. 73–C–1.

United States District Court, S. D. Texas, Corpus Christi Division.

Oct. 30, 1975.

Robert L. Norris and Robert D. McGee, Exxon Corp., Houston, Tex. [Co-counsel: Frank Nesbitt, Corpus Christi], for Exxon Corp., plaintiff.

Jack Skaggs, Stiernberg, Skaggs & Koppel, Harlingen, Tex., for Duval County Ranch Co., defendant.

### MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

The Court on its own motion raised the question of whether there existed diversity citizenship between the two

corporations in this lawsuit. A corporation is considered a citizen of the state of its incorporation and a citizen of the state where it has its principal place of business. 28 U.S.C. § 1332(c). It was clear to this Court that Defendant Duval County Ranch Company was a citizen of Texas, being incorporated under the laws of the State of Texas and having its principal place of business in this state. It was not similarly clear of what state or states the Plaintiff Exxon Corporation or its parts might be a citizen. The Plaintiff alleged that it was incorporated under the laws of the State of New Jersey and that it had its principal office and place of business in the State of New York. The Court felt that it was proper to test the Plaintiff's jurisdictional allegations because the Court had held in *Coles v. Humble Oil & Refining Company,* 348 F.Supp. 1240 (S.D.Tex.1973), that Humble Oil & Refining Company, one of the building blocks of the Exxon Corporation, was a separate juridical entity for diversity purposes with its principal place of business in Texas. As substantially all the operating functions of Humble Oil are now carried on by Exxon, U.S.A., a division of Exxon Corporation, the possibility existed that this division should be treated as a separate juridical entity, as Humble Oil had been. If it were treated in such a manner and on that basis its principal place of business were found to be in Texas, there would be no diversity of citizenship. Therefore, the Court asked the Plaintiff to show, as they alleged, that the conversion of Humble Oil into a division of the Exxon Corporation established a new juridical entity, Exxon Corporation, with its principal place of business in a state other than Texas. The parties have filed briefs, affidavits and extended interrogatories.

It appears to this Court that the Defendant has not seriously disputed the facts surrounding the merger of Humble Oil into the then newly formed Exxon Corporation. Rather, the Defendant disputes only the implications to be drawn from those facts in deciding whether Exxon, U.S.A. should be treated as a separate juridical entity for diversity purposes. The salient facts are few. Effective January 1, 1973, Humble Oil and other national and international corporate entitles were merged into Exxon Corporation (formerly Standard Oil of New Jersey). This new corporation filed its articles of incorporation in New Jersey. As a result of this corporate transformation, what had formerly been Humble Oil became basically what is now referred to as Exxon, U.S.A., one of four major divisions of Exxon Corporation. Exxon Corporation succeeded to all the assets and liabilities of Humble Oil. The executive officers of Exxon, U.S.A., who initially were the same persons who had managed Humble Oil, now operate under authority delegated to them by the Board of Directors of Exxon Corporation, rather than from its own independent board of directors. The corporate headquarters for Exxon Corporation are in New York City, and the division headquarters for Exxon, U.S.A. are in Houston, Texas. All major business and financial decisions affecting the Exxon Corporation and its divisions are made in its New York headquarters. Tax returns for the entire Exxon Corporation are filed in New York.

The Plaintiff Exxon Corporation asserts that Exxon, U.S.A. is an integral part of Exxon Corporation, that Humble Oil has ceased to exist and therefore the Court must look to the citizenship of Exxon Corporation. The Plaintiff goes on to argue that under either of the prevailing tests for determining the principal place of business of a corporation (e. g., the "nerve center test" or "the day-to-day activity test"), the principal place of business of the Exxon Corporation is New York City. The Defendant counters by arguing that the functions for which Exxon Corporation was organized and the purposes for which it exists in the United States have been delegated to Exxon, U.S.A., which is managed by the same people who work in the same building as when it was denominated Humble Oil, and that Exxon, U.S.A., as

was Humble Oil, should be viewed as a separate juridical entity having its principal place of business in Houston, Texas.

This Court, in *Coles v. Humble Oil and Refining Company, supra,* rejected the contention that Humble Oil was the alter-ego of Standard Oil Company and therefore it also rejected the contention that its principal place of business should be the same as that of Standard Oil, which was New York City. This Court held that although Humble Oil was wholly owned by Standard Oil and Standard Oil exerted considerable influence over the management of that company, they should not be treated as the same entity for diversity purposes. It was further pointed out that at the time Standard's operations had not been merged into Humble. *Id.,* at 1243. The decision of the Court was in accordance with the general principle that where the separation between a parent company and a subsidiary company is "real" and carefully maintained, that a separate place of business for the subsidiary can be recognized. *Lurie Company v. Loew's of San Francisco Hotel Corp.,* 315 F.Supp. 405 (N.D.Cal.1970).

It appears to this Court that for the Defendant to argue that Exxon, U.S.A. is a separate juridical entity apart from the Exxon Corporation, as was Humble Oil from Standard Oil at the time of the *Coles* decision, ignores the fundamental changes which have occurred. Exxon, U.S.A. is not incorporated independently of the Exxon Corporation, as Humble Oil was of Standard Oil. There is now no separate ownership of assets. The executive officers of Exxon, U.S.A. fall directly under the Board of Directors of Exxon Corporation. The Humble Oil Company is now part of a much larger and diverse organization. These corporations have completely merged and this Court cannot do otherwise but find that Humble lost its status as a separate juridical entity and that it has taken on the status of Exxon Corporation. See *Asher v. Pacific Power and Light Company,* 249 F.Supp. 671 (W.D.

Cal.1965); *Vance v. U.S. Steel Co.,* 189 F.Supp. 946 (E.D.Penn.1960); *Akwell v. Eiger,* 141 F.Supp. 19 (S.D.N.Y.1956).

Having decided that Exxon Corporation and not Exxon, U.S.A. is the relevant juridical entity, the question then becomes where is the "principal place of business" of Exxon Corporation. A determination of the principal place of business clearly depends on the facts of each case. *Frazier v. Alabama Motor Co., Inc.,* 349 F.2d 456 (5th Cir. 1965). While there are various "labeled" tests for determining a corporation's principal place of business, such as a "nerve center" test or "place of operations" test, the Fifth Circuit seems to have adopted an approach which ignores the labels and looks to the "total activity" of the corporation. *Danos v. Waterford Oil Co.,* 351 F.2d 940 (5th Cir. 1965). This is a difficult concept to apply to a corporation with nationwide and worldwide operations. Charles Allen Wright has suggested that where there are substantial operations in each of several states, and where the administrative offices are in one of those states, then the state which is the locale of those offices should be seen as the principal place of business. 13 Wright, *Federal Practice and Procedure,* § 3625, at 789 (1975). This is essentially what the Tenth Circuit held in *United Nuclear Corp. v. Moki Oil and Rare Metals Corp.,* 364 F.2d 568 (10th Cir. 1966), and this Court shall follow that lead. New York is undoubtedly the center of corporate activity from an administrative standpoint of Exxon Corporation. It is from New York that the major company divisions, Exxon, U.S.A., Exxon Chemical, Esso Middle East, and Exxon International Co., along with many minor divisions, receive their direction. All these major divisions, save Exxon, U.S.A., are headquartered in New York.

The Court therefore finds that it must look to the citizenship of Exxon Corporation for the purpose of determining whether there exists diversity jurisdiction and that the citizenship of this corporation is New Jersey, the state of its

1370

incorporation, and New York, the state of its principal place of business. As Duval County Ranch Company is a citizen of the State of Texas, the Court finds that diversity jurisdiction exists.

It is so ordered.