Abraham **ALVARADO MORALES,** et al., Plaintiffs,

v.

**DIGITAL EQUIPMENT CORP.,** et al., **Defendants.**

Civ. No. 86–0464(PG).

United States District Court, D. Puerto Rico.

Feb. 20, 1987.

Jesús Hernández-Sánchez, Santurce, P.R., for plaintiffs.

Vicente J. Antonetti, Santurce, P.R., Ronald M. Green, Philip M. Berkowitz and Susan Romero, Epstein, Becker, Borsody & Green, New York City, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

This matter is before the Court on defendants' motion for summary judgment to strike scandalous pleadings and to impose sanctions against plaintiffs' counsel. For the reasons stated below, we grant the defendants' motion in all respects.

I

## THE COMPLAINT

Plaintiffs, former employees of non-party Digital Equipment Corporation of Puerto Rico (Digital Puerto Rico), brought this putative class action against Digital Puerto Rico's parent corporation, Digital Equipment Corporation (Digital Corp.); and Ed Schwartz, Ilene Jacobs and George F. Doriot, as individuals and in their capacities as Digital Corp. officers.

Plaintiffs alleged in their first amended complaint, filed on June 19, 1986, that they were long-time employees of the defendants who had significantly contributed to Digital Corp.'s profits. *Id.* ¶ 4. Plaintiffs alleged that despite their contributions, by continuing their paid employee status and not terminating their employment the defendants "tortured" and "brainwashed" plaintiffs with "concentration camp" tactics "which reminds us, american [sic] citizens of the brainwashed [sic] techniques used by Chinese communists in Korea and the North Vietnamese in Vietnam ..." *Id.* ¶ 14(c).

Plaintiffs alleged that they and approximately 200 employees of Digital Puerto Rico's San Germán facility and approximately 80 employees of its Aguadilla facility were "targeted for dismissal" and forced to work "in a room which is about 1,200 square feet,"[1] which plaintiffs called a "concentration camp." First Amended Complaint ¶ 14(a). They alleged that these employees were subject to continual harassment in the form of pressure to resign, pressure to forgo unemployment compensation, given no work to perform (while being paid), and kept separated from other employees. *Id.* ¶ 14(b). Plaintiff contended that these acts resulted in a variety of disorders, both physical and emotional.

Plaintiffs alleged that the defendants were intentionally seeking to deprive plaintiffs of rights to severance pay under Puerto Rico law, and that the defendants refused to permit plaintiffs to meet with

---

1. In their initial complaint at ¶ 4(a), plaintiffs alleged that this room was 200 square feet. Plaintiff Morales testified at his deposition that the area was "3,200 square feet." *See,* Morales Deposition at 47, June 19, 1986.

Puerto Rico Department of Labor representatives, in violation of plaintiffs' constitutional rights. *Id.* ¶ 15. Each plaintiff and each employee similarly situated in the San Germán and Aguadilla plants within the "Transition Group" requested $100,000 in compensatory damages and $100,000 in punitive damages, *id.* ¶ 15, for a total of $200,000,000 in damages. *Id.* ¶ 17. Plaintiffs fail to indicate in their pleadings the method they used to calculate these damages.

## II

## THE VOLUNTARY INCENTIVE RESIGNATION PLAN

In or about February 1986 Digital Puerto Rico offered certain of its employees in its Aguadilla and San Germán facilities a voluntary incentive resignation (VIR) plan in an effort to combat short-and-long-term work-force imbalances caused by technological changes, fluctuations in the quantity of work, and a need to become more competitive. *See,* Morales Deposition at 34–35. Under this plan, employees whose jobs were affected were provided with career counseling and training and permitted to look for jobs, during working hours, while being paid. *Id.* at 38. These employees reported to a "transition area" where they were provided with resources to seek alternative employment, counseling and training. *Id.* at 36–38.

Digital Puerto Rico offered affected employees a separation allowance designed to ease the transition between the end of their employment with Digital Puerto Rico and the beginning of their next position. *Id.* at 26–28. The amount of the payment was based on a formula of 4 weeks' pay for each full year of service completed as of the date the individual terminated employment, to a maximum of 15 years' service (or 60 weeks of allowance). *See,* Morales Dep. at 27. In addition, each affected employee received 13 weeks' pay, over and above the amount provided by the formula. Finally, each employee who accepted the terms of the VIR plan received 6 months of extended medical and dental coverage from the date of resignation.

The employees were given 4 months, until May 30, 1986, to decide whether they would accept these benefits. *Id.* at 26–28, 48–50. However, they were never told that their employment would be terminated if they declined the benefits; indeed, Mr. Morales testified that he understood that he could continue to report to the transition area, while being paid, until such time as he found alternative employment. *Id.*

## III

## THE DEFENDANTS' MOTION

In lieu of answering the amended complaint, pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure, the defendants timely filed the instant motion for summary judgment.[2] In support of their motion, the defendants submitted a statement pursuant to Local Rule 311.12 setting forth material facts as to which they contend there are no genuine issues to be tried. The defendants also submitted the sworn affidavits of individual defendants Schwartz, Jacobs and Doriot, Mr. Sam Landol, Digital Puerto Rico's President, and of Digital Corp.'s attorney, Vicente J. Antonetti.[3]

---

**2.** On or about September 19, 1986, without leave of Court, plaintiffs filed a "Second Amended Complaint" that purported to join Digital Puerto Rico as a party defendant. On September 22, 1986, plaintiffs also filed a "Motion to Intervene as Party Plaintiffs under Fed.R.Civ.P., Rule 24" on behalf of approximately 166 individuals, whose relation to this suit was unexplained. On or about September 23, 1986, plaintiffs filed a "Motion Requesting Leave to Include Members of the Board of Directors of Digital Corp. and Some of its Officers as Defendants;" and a "Motion Requesting the Complaint Against Co-Defendants General Georges F. Doriot, Ilene B.

Jacobs and Ed Schwartz Not Be Dismissed for Lack of Prosecution." Finally, on or about December 11, 1986, plaintiffs filed another "Motion to Intervene as Party Plaintiffs under Fed. R.Civ.P., Rule 24" on behalf of approximately sixteen individuals whose relation to this suit was also unexplained. As we herewith grant the defendants' summary judgment motion, it is unnecessary to rule on these other various motions brought by plaintiffs.

**3.** The defendants also submitted in support of their motion the deposition testimony of named

The defendants' affidavits establish that the sole employer of the named plaintiffs is non-party Digital Puerto Rico. *See,* Affidavit of Edward A. Schwartz, ¶ 7 (June 13, 1986) (hereinafter Schwartz Aff.); Affidavit of Ilene B. Jacobs, ¶ 7 (June 13, 1986) (hereinafter Jacobs Aff.). (Indeed, plaintiffs' counsel conceded at oral argument, held on December 12, 1986, that he sued Digital Corp. in an effort to obtain diversity jurisdiction and hence a jury trial in federal court.) *See also,* Affidavit of Vicente J. Antonetti, ¶¶ 3, 4, 5 (June 13, 1986) (hereinafter Antonetti Aff.).

The defendant Digital Corp., a corporation organized and existing under the laws of Massachusetts, is not licensed to, nor does it, do business in Puerto Rico. Digital Puerto Rico, a wholly owned subsidiary of Digital Corp., is incorporated in Delaware and licensed to conduct business in Puerto Rico. *See,* Schwartz Aff. ¶ 3; Jacobs Aff. ¶ 3; Antonetti Aff. ¶ 2. Each of the individual defendants is a resident and citizen of the Commonwealth of Massachusetts, and none has been served with the complaint or amended complaint in this matter. Schwartz Aff. ¶¶ 1, 2.

The affidavits submitted by defendants in support of their motion depict a genuine, conventional parent-subsidiary relationship between Digital Corp. and Digital Puerto Rico. Digital Puerto Rico formulates and implements its own personnel policies and advertising without Digital Corp.'s involvement. The two companies have separate corporate structures, facilities, work forces, business records, bank accounts, tax returns, financial statements, budgets, and corporate reports. They have separate and distinct Boards of Directors. Schwartz Aff. ¶ 5; Jacobs Aff. ¶ 4. None of the members of the Digital Corp. Board of Directors are residents of Puerto Rico, nor has any Digital Corp. board member had any personal involvement in the implementation of Digital Puerto Rico's personnel policies and procedures or with any of the

factual issues forming the basis for the allegations of the amended complaint. Schwartz Aff. ¶¶ 1, 2.

Digital Puerto Rico contracts in its own name, funds its own pension plan, administers and funds its own benefit program for its employees, and has its own budget. Significantly, Digital Corp. and Digital Puerto Rico each establishes its own separate labor relations and personnel policies. No member of the Digital Corp. Board of Directors, moreover, has had any involvement whatsoever with the factual issues raised in the amended complaint. *See,* Schwartz Aff. ¶¶ 6, 7; Jacobs Aff. ¶¶ 5, 6; Antonetti Aff. ¶ 2.

### IV

### THE PLAINTIFFS' RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTION

In response to the defendants' sworn affidavits and Local Rule 311.12 statement, the plaintiffs submitted "sworn statements" of former Digital Puerto Rico employees Pedro E. Almodóvar Nazario, Angel Luis Quiñones, and named plaintiff Abraham Alvarado Morales.[4] *See,* Sworn Statement of Pedro E. Almodóvar Nazario (November 21, 1986) (hereinafter Nazario Statement); Sworn Statement of Angel Luis Quiñones (November 16, 1986) (hereinafter (Quiñones Statement); Sworn Statement of Abraham Alvarado Morales) (November 21, 1986) (hereinafter Morales Statement).

### A. Plaintiffs' Affidavits Must Establish Material Issues of Fact and Must be Based on Personal Knowledge

■ To defeat a summary judgment motion, the affidavits of the opposing party may not present merely issues of fact, but must establish issues of "material fact." *See,* Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505,

---

plaintiff Abraham Alvarado Morales (June 19, 1986).

**4.** Plaintiffs initially submitted unsworn "affirmations" which failed to comply with 28 U.S.C.

§ 1746. On December 11, 1986, just prior to oral argument on this motion, plaintiffs filed an "Informative Motion" and submitted notarized "Sworn Statements."

91 L.Ed.2d 202 (1986); *Berrigan v. Greyhound Lines, Inc.,* 782 F.2d 295, 300 (1st Cir.1986); *Berkson v. Del Monte Corp.,* 743 F.2d 53, 55 n. 2 (1st Cir.1984), *cert. denied,* 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Facts are material if they constitute a legal defense or if their existence or non-existence might affect the result of the action, or if the resolution of the issues they raise is so essential that the party against whom it is decided cannot prevail. 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure:* Civil § 2725 (1983 & Supp.1986). *See, Hahn,* 523 F.2d at 464; *Hanover Ins. Co. v. Liberian Oceanway Corp.,* 398 F.Supp. 104, 109 (D.P.R.1975).

In opposing a summary judgment motion, a party may not merely reargue its case or deny its opponent's allegations. *See, Palhava de Varella-Cid v. Boston Five Cents Savings Bank,* 787 F.2d 676 (1st Cir.1986); *Bryson v. Royal Business Group,* 763 F.2d 491, 493–94 (1st Cir.1985); *Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 46 (1st Cir.1984); *Mas Marques v. Digital Equipment Corp.,* 637 F.2d 24, 27 (1st Cir.1980); *MIL/5 Cash & Carry Corp. v. Grand Union Co.,* 571 F.Supp. 255 (D.P.R.1983).

Affidavits in support of or in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure:* Civil § 2738 (1983 & Supp.1986). *See, Davis v. Sears, Roebuck & Co,* 708 F.2d 862, 864 (1st Cir.1983); *Hanh,* 523 F.2d at 466. These requirements are mandatory, *Id.*

*See, Over the Road Drivers, Inc. v. Transport Ins. Co,* 637 F.2d 816 (1st Cir.1980). An affidavit that does not meet the standards of Rule 56(e) is subject to a motion to strike. *Davis v. Sears, Roebuck & Co.,* 708 F.2d at 864.

B. The Material Facts Set Forth in Defendants' Rule 311.12 Statement Must be Deemed to Have Been Admitted by the Plaintiffs

Rule 311.12 provides that, upon a motion for summary judgment, there must be submitted a short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. D.P.R.R. 311.12. *See, EBI, Inc. v. Gator Industries,* 807 F.2d 1 (1st Cir.1986). The rule further provides that the papers opposing a motion for summary judgment shall include a "separate, short and concise statement of the material facts as to which it is contended by the non-moving party that there exists a genuine issue to be tried properly supported by specific reference to the record." D.P.R.R. 311.12. Finally, the rule states: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *Id.*

Plaintiffs merely submit a statement of the material facts as to which they contend there exists *no* genuine issue to be tried. They admit many of the material facts set forth by the defendants.[5] Plaintiffs' failure to submit a Rule 311.12 counter-statement requires that each of the seventeen material facts set forth in defendants' 311.12 statement be deemed admitted as a matter of law. Where the non-moving party fails to set forth facts which indicate that there is a genuine issue to be tried, the Federal Rules of Civil Procedure require that summary judgment be granted. Fed.

---

**5.** Plaintiffs admit facts 1, 3 and 15 on page 1 of plaintiffs' uncontested issues of fact and fact 14 on page 2. Plaintiffs admit that Digital Corp. is organized and existing under the laws of the Commonwealth of Massachusetts. Plaintiffs further admit that Digital Puerto Rico is incorporated in Delaware and licensed to conduct business in Puerto Rico. Finally, plaintiffs concede that Digital Puerto Rico is the sole employer of the named plaintiffs and that a bona fide parent-subsidiary relationship exists between Digital Corp. and Digital Puerto Rico. Plaintiffs neither admit nor deny facts 6, 7, 10, 16 or 17 of defendants' 311.12 statement.

R.Civ.P. 56(e). *See also, Mutual Fire, Marine & Inland Ins. Co. v. Costa,* 789 F.2d 83, 85 (1st Cir.1986); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 411 (1st Cir.1985); *Hahn,* 523 F.2d at 464.

V

## THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

A. Neither Digital Corp. nor the Individual Defendants Are Proper Parties Under the Puerto Rico Long-Arm Statute, P.R.R. Civ. P. 4.7(a)

Puerto Rico's long-arm statute, Rule 4.7 of the Puerto Rico Rules of Civil Procedure, provides several possible bases for jurisdiction over a nonresident defendant. The statute permits a court to establish jurisdiction over a person if the cause of action arises out of, *inter alia,* the transaction of business in Puerto Rico or his or her participation in tortious acts within Puerto Rico personally or through an agent. P.R. Laws. Ann., Title 32, App. III R. 4.7 (1983). *See, Díaz v. Becton Dickinson & Co., S.A.,* 618 F.Supp. 539, 541 (D.P.R.1985) *(citing, A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864, 870 (1970)). The purpose of the long-arm statute is to ascertain whether a nonresident defendant has sufficient contacts with the forum so as to justify subjecting him to the court's jurisdiction. *See generally, Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The plaintiffs, who have the burden of proving that this Court has *in personam* jurisdiction over the defendants, must demonstrate that the defendants established "certain minimum contacts" within Puerto Rico so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 U.S. 154, 158, 90 L.Ed. 95 (1945). *See also, McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). A foreign corporation will not be subject to *in personam* jurisdic-

tion until it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The conduct of business transaction occurring in Puerto Rico must be a purposeful act performed by the defendant upon whom personal jurisdiction is sought. *See, A.H. Thomas Co. v. Superior Court,* 98 P.R.R. at 869; *González v. Muñoz,* 597 F.Supp. 1231, 1234 (D.P.R.1984), *aff'd mem.,* 767 F.2d 905 (1st Cir.1985). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws." *A.H. Thomas v. Superior Court,* 98 P.R.R. at 869 *(citing, Hanson v. Denckla, supra ).* The plaintiffs must make some showing of direct personal involvement in the alleged tortious acts, which is causally related to the plaintiffs' alleged injuries. *Escudé Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 907 (1st Cir. 1980). *See also, Mangual v. General Battery Corp.,* 710 F.2d 15, 19 (1st Cir.1983).

Digital Corp. may not be subject to the Court's jurisdiction merely because it owns the legally separate entity Digital Puerto Rico. *Mangual v. General Battery Corp.,* 710 F.2d at 20. There is a presumption of corporate separateness that must be overcome by clear evidence that the parent, in fact, controls the activities of the subsidiary. *See, Mas Marques,* 637 F.2d at 24 (court lacked long-arm jurisdiction over foreign, wholly owned subsidiary of Digital Corp.); *Escudé Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d at 905.

Plaintiffs fail to allege any facts indicating that Digital Corp. or the individual defendants transacted business in Puerto Rico pursuant to P.R. Laws Ann., Tit. 32, App. III R. 4.7. Plaintiffs also fail to allege facts sufficient to establish that Digital Corp. or the individual defendants committed torts within Puerto Rico, either by themselves or through their agents. Moreover, there is no causal connection between

any business transaction or tortious conduct and plaintiffs' alleged injuries.[6]

Plaintiff Morales has testified that he has no reasonable basis to believe that Digital Corp. engaged in the conduct alleged in the amended complaint. Morales Deposition at 60–69. The defendants' affidavits make it clear that the complaint alleges conduct committed (if at all) *only* by Digital Puerto Rico.

### B. This Court Lacks Jurisdiction Over the Individual Defendants

The named corporate defendants are sued in their capacities as Digital Corp. officers. This is insufficient to establish jurisdiction over them in their individual capacities. *See, Mangual v. General Battery Corp.*, 701 F.2d at 19; *Díaz v. Becton Dickinson & Co., S.A.*, 618 F.Supp. at 541.

■ It is well settled that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation, assuming jurisdiction exists. An independent basis for asserting jurisdiction over the nonresident agents must exist. *Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d at 906; *Díaz v. Becton Dickinson & Co., S.A.*, 618 F.Supp. at 541. *See also, Mangual v. General Battery Corp.*, 710 F.2d at 19; *A.H. Thomas Co. v. Superior Court*, 98 P.R.R. at 870.

■ Corporate officers are not amenable to suit in their personal capacity absent a showing of their personal involvement in plaintiff's alleged injuries, and even then, only in limited circumstances. *Escudé Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d at 907; *Díaz v. Becton Dickinson & Co., S.A.*, 618 F.Supp. at 542. Plaintiffs fail to assert a legitimate independent basis for asserting jurisdiction over the individual defendants. Of course, a complaint must be served upon an individual for the court to have jurisdiction over that person, and this has not occurred herein. *See,* Fed.R.Civ.P. 4(d)(1).

## VI

### DIGITAL CORP. MAY NOT BE HELD LIABLE FOR DIGITAL PUERTO RICO'S ALLEGED CONDUCT UNDER THE "COMMON CONTROL" DOCTRINE

■ Digital Corp. and Digital Puerto Rico do not constitute a single enterprise or employer under the test developed by the National Labor Relations Board. *See, Radio & Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (considering (1) interrelations of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership); *Mas Marques*, 637 F.2d at 27. *Cf., Odriozola v. Superior Cosmetic Distributors Corp.,* — D.P.R. —, 85 J.T.S. 51 (1985).

### A. Digital Corp. and Digital Puerto Rico Have Separate and Distinct Boards of Directors

Defendants set forth in their 311.12 statement that Digital Corp. and Digital Puerto Rico have separate and distinct Boards of Directors. This statement is supported by sworn affidavits submitted by officers of Digital Corp. and officers and members of the Board of Directors of Digital Puerto Rico. *See,* Schwartz Affidavit, ¶ 6; Jacobs Affidavit, ¶ 4.

Plaintiffs present the "sworn statement" of Mr. Angel Luis Quiñones, a former Digital Puerto Rico employee, that all of the members of the alleged Board of Directors of Digital Puerto Rico for the year 1985 were also officers of Digital Corp. *See,* Quiñones Statement, ¶ 8(k). Mr. Quiñones bases his knowledge upon certain "documents" which he claims were filed by Digital Puerto Rico with the Puerto Rico State Department. *Id.,* ¶ 8(k). Even assuming the existence of some degree of

---

**6.** The mere fact that Digital Corp. and Digital Puerto Rico may purchase products from each other, even if the purchases occur "at regular intervals," does not subject Digital Corp. to the jurisdiction of this Court. *See, Rosenberg Bros.*

*& Co. v. Curtis Brown Co.*, 260 U.S. 516, 518, 43 S.Ct. 170, 171, 67 L.Ed. 372 (1923); *Mas Marques, supra; Blount v. Peerless Chemicals (P.R.), Inc.*, 316 F.2d 695 (2nd Cir.), *cert. denied,* 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963).

interrelationship of board membership, however, this does not prove that Digital Corp. actually controls Digital Puerto Rico's management. *See, e.g., Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F.Supp. 841 (N.D.Cal. 1979), *aff'd*, 658 F.2d 1256 (9th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982); *Beckwith*, 617 F.Supp. at 189.

**B. No Member of the Digital Corp. Board of Directors Has Had Any Involvement Whatsoever in the Factual Issues Raised in the Complaint**

Defendants' Rule 311.12 statement and sworn affidavits support the fact that no member of the Digital Corp. Board of Directors has had any involvement in the factual issues raised in the complaint. *See,* Schwartz Affidavit, ¶ 2; Jacobs Affidavit, ¶ 1. Plaintiffs fail to counter these assertions.

In several instances, Mr. Quiñones and Mr. Nazario reveal the limitations of their own knowledge. Mr. Quiñones admits that he had no knowledge of any directives, orders, instructions, policies or memorandums coming from any Board of Directors or officers of Digital Puerto Rico. *See,* Quiñones Statement, ¶ 7. Indeed, both Mr. Quiñones and Mr. Nazario admit that they have never heard of a Board of Directors or of officers of Digital Puerto Rico. *See,* Quiñones Statement, ¶ 7; Nazario Statement, ¶ 4. Mr. Nazario claims that he should have been aware of such information because of his duties in Personnel and as a manager. *See,* Nazario Statement, ¶ 4. He neglects, however, to indicate the basis for his personal knowledge or to provide any evidence of the duties he performed.

**C. No Member of the Digital Corp. Board of Directors Has Had Any Personal Involvement in the Implementation of Digital Puerto Rico's Personnel Policies and Procedures**

Defendants provide substantial evidence, through sworn affidavits, that no member of the Digital Corp. Board of Directors has had any personal involvement in the implementation of Digital Puerto Rico's personnel policies and procedures. *See,* Schwartz Affidavit, ¶ 2; Jacobs Affidavit, ¶ 1. Plaintiffs' statements to the contrary do not appear to be based upon personal knowledge, as required by Fed.R.Civ.P. 56(e), and fail to establish a genuine issue of material fact. *See, Mas Marques,* 637 F.2d at 29.

**D. Digital Puerto Rico Contracts in Its Own Name, Funds Its Own Pension Plan, Administers and Funds Its Own Benefits Program for Its Employees and Has Its Own Budget**

Defendants provide significant factual support for their assertion that Digital Puerto Rico is an entirely separate corporate entity which contracts in its own name, funds its own pension plan, administers and funds its own benefits program for its employees, and has its own budget. *See,* Schwartz Affidavit, ¶ 7; Jacobs Affidavit, ¶ 6; Landol Affidavit, ¶ 8. The affidavit of Mr. Sam Landol, the President of Digital Puerto Rico, moreover, establishes that Digital Puerto Rico initiated, formulated, and implemented the VIR plan, which was approved, in its final form, by Digital Corp. *See,* Affidavit of Sam Landol, ¶ 13 (October 27, 1986) (hereinafter Landol Affidavit).

Plaintiffs fail to set forth any facts which support their contention that Digital Corp. controls Digital Puerto Rico's personnel policies. The unsupported assertions by plaintiffs that Digital Corp. established the medical plan, retirement benefits and long-term disability plan for the employees of Digital Puerto Rico do not raise genuine factual issues, nor does their assertion that Digital Corp. approved the VIR plan which Digital Puerto Rico implemented. Quiñones Statement, ¶¶ 8(h), (i), (j), 9. The mere fact that a parent corporation may assert authority to approve or reject plans of its subsidiary does *not* establish that the parent plans, implements or in any way controls the subsidiary's policies. *Beckwith,* 617 F.Supp. at 189–90; *de Walker v. Pueblo International, Inc.,* 569 F.2d 1169, 1171 (1st Cir.1978); *Odriozola,* —— D.P.R. ——, 85 J.T.S. 51 (1985).

### E. Digital Corp. and Digital Puerto Rico Establish Their Own Separate Employee Relations and Personnel Policies

The uncontroverted facts set forth by defendants establish that Digital Corp. and Digital Puerto Rico are separate and distinct corporate entities with their own separate employee relations and personnel policies. *See*, Schwartz Affidavit, ¶ 7; Jacobs Affidavit, ¶ 6; Landol Affidavit, ¶ 5. At his deposition plaintiff Morales was unable to identify a single policy or decision made by Digital Corp. or any of the individual named defendants. Morales Deposition at 69. Even if the policies were similar or identical, this would not evidence Digital Corp.'s *control* over Digital Puerto Rico's personnel policies or practices or of the issues raised herein. *See, Mas Marques*, 637 F.2d at 29.

### F. A Bona Fide Parent-Subsidiary Relationship Exists Between Digital Corp. and Digital Puerto Rico

Defendants have submitted sworn affidavits establishing that a genuine parent-subsidiary relationship exists between Digital Corp. and Digital Puerto Rico. *See*, Schwartz Affidavit, ¶ 5; Jacobs Affidavit, ¶ 4, Landol Affidavit, ¶ 5. Plaintiffs concede in both their opposition to summary judgment *and* their statement of uncontested issues of fact that Digital Corp. and Digital Puerto Rico are "separate and distinct" corporate entities. *See*, Memorandum of Law in Opposition at 5; Uncontested Issues of Fact, ¶ 8.

### G. Digital Puerto Rico, and Not Digital Corp., Employed the Plaintiffs

The evidence presented by defendants unequivocally shows that Digital Puerto Rico, and not Digital Corp., employed the plaintiffs. *See*, Schwartz Affidavit, ¶ 8; Jacobs Affidavit, ¶ 7; Landol Affidavit, ¶ 7. Plaintiffs concede that this is true. *See*, Memorandum of Law in Opposition at 5; Uncontested Issues of Fact, ¶ 5.

## VII

### THE "NERVE CENTER TEST" IS IRRELEVANT TO THE INSTANT MOTION

■ In support of their contention that Digital Corp. exercised control over Digital Puerto Rico, plaintiffs cite the "nerve center" test enunciated in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D. N.Y.1959). *See*, Memorandum of Law in Opposition at 3. This test is inapplicable in this case. The *common control* doctrine is the proper test to use in determining the existence of a single enterprise or employer. *See, Radio & Television Broadcast Technicians Local 1264*, 380 U.S. at 256, 85 S.Ct. at 877; *Mas Marques*, 637 F.2d at 27. The instant case involves two separate corporations.[7] Indeed, plaintiffs conceded that "plaintiffs employer is Digital Puerto Rico, a distinct corporate entity" from Digital Corp. *See*, Memorandum of Law in Opposition at 5.

Although organized under the laws of the State of Delaware, Digital Puerto Rico is authorized to do business and has its principal place of business in Puerto Rico. *See, Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490, 495 (S.D.N.Y.1963). All of plaintiffs' supervisors were employed and carried out their responsibilities in Puerto Rico. *See*, Landol Affidavit, ¶ 11. The principal operating and adminis-

---

7. It is well established that a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business, and accordingly, may possess dual citizenship if such place is located in a different state from that in which it is chartered. *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405, 410 (N.D.Cal.1970).

Where the corporate separation between a parent and subsidiary, though perhaps merely formal, is real and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction even though the parent corporation exerts a high degree of control through corporate ownership or otherwise. *See, Caperton v. Pocahontas*, 420 F.Supp. 445, 450–51 (W.D.Va.1976), *aff'd*, 585 F.2d 683 (4th Cir.1978); *Exxon Corp. v. Duval County Ranch Co.*, 406 F.Supp. 1367 (S.D.Tex. 1975); *Lurie*, 315 F.Supp. at 410.

trative officers of Digital Puerto Rico have their offices in Puerto Rico, and all of the corporation's manufacturing, fiscal, accounting, and operational offices are in Puerto Rico. *Id.* ¶ 10. All of Digital Puerto Rico's employees are employed and work in Puerto Rico. *Id.* ¶ 19.

The "nerve center" test seems most appropriate in the case of a *holding company. Lugo-Vina v. Pueblo Int'l, Inc.,* 574 F.2d 41, 43 n. 2 (1st Cir.1978). As noted by the Court during oral argument, Digital Puerto Rico is not a holding company—it is a corporation with overwhelmingly Puerto Rican operations. Even if Digital Puerto Rico were the type of corporation for which the "nerve center" test would be appropriate, plaintiffs must still carry the burden of establishing that Digital Puerto Rico has its nerve center outside Puerto Rico. *See, de Walker,* 569 F.2d at 1169. Plaintiffs have failed to do so.

### VIII

### THE COMPLAINT IS BARRED BY THE PUERTO RICO WORKMEN'S ACCIDENT COMPENSATION ACT

█ Even if the complaint were not defective as a matter of law as against Digital Corp. and the individual defendants for the reasons stated above, the complaint would be barred by the Puerto Rico Workmen's Accident Compensation Act (PRWACA), P.R.Laws Ann. tit. 11, §§ 19, 21 (1978). Indeed, plaintiffs' counsel conceded at oral argument, held on December 12, 1986, that he merely sued Digital Corp. in order to obtain diversity jurisdiction and to avoid the workers' compensation bar which Digital Puerto Rico could have asserted.

The PRWACA provides the sole remedy to covered employees injures in the course of their employment. *Lusson v. Carter,* 599 F.Supp. 8 (D.P.R.1983), *aff'd in part, vacated in part, and remanded,* 704 F.2d 646 (1st Cir.1983); *Odriozola, supra,* 85 J.T.S. 51; *Admor F.S.E. v. Flores Hermanos Cement Prods., Inc.,* 107 D.P.R. 789 (1978); *Boiler Constr. & Repair v. Superior Court,* 100 P.R.R. 753 (1972); *López-*

*Correa v. Marine Navigation Co.,* 289 F.Supp. 993 (D.P.R.1968). Plaintiffs are precluded by the exclusivity provision of the PRWACA from asserting a common law claim based upon emotional injury. *See, Morell v. F.S.E.,* 110 D.P.R. 709 (1981); *Resto Casillas v. Colón González,* 112 D.P.R. 644 (1982); 2A Larson, Workmen's Compensation, § 68.34(a) (1983). *See also, Underwood v. Digital Equip. Corp.,* 576 F.Supp. 213 (D.Mass.1983).

The Puerto Rico Legislature has left no doubt as to the exclusivity of the remedy provided by the PRWACA for physical or emotional injuries which occur during the course of employment. Section 21 provides in pertinent part: "When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer...."

The courts have strictly enforced the exclusive statutory remedy for such claims. *See, e.g., Lusson v. Carter,* 704 F.2d 646, 649 (1st Cir.1983); *Ruiz Rodríguez v. Litton Indus. Leasing Corp.,* 428 F.Supp. 1232, 1234 (D.P.R.1977), *aff'd,* 574 F.2d 44 (1st Cir.1978); *López Correa v. Marine Navigation Co.,* 289 F.Supp. 993, 998 (D.P.R.1968); *Andino v. Puerto Rico Water Resources Autho.,* 93 D.P.R. 170 (1966); *De Jesús v. Osorio,* 65 P.R.R. 601 (1946); *Onna v. Texas Co.,* 64 D.P.R. 497 (1945).

Puerto Rico does not recognize claims for intentional infliction of emotional distress or any other tort actions brought by an employee against an employer where the alleged injury occurs during the course of employment. Accordingly, a tort suit as to these claims is barred by the PRWACA.

### IX

### PUERTO RICO LAW DOES NOT RECOGNIZE A WRONGFUL DISCHARGE CAUSE OF ACTION

The plaintiffs claim that Digital Corp. has engaged in conduct which amounts to wrongful, constructive discharge of certain employees.[8] *See* Amended Complaint, ¶¶ 14(a), (b), (c) and (d), and 15.

---

**8.** The doctrine of constructive discharge has been described as follows:

The traditional rule is that a hiring for an indefinite term represents employment at will, and either party may terminate the employment relationship at any time with or without cause or notice in the absence of a limiting statute or agreement of the parties. *See, e.g., Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Puerto Rico courts have not recognized the right of at-will employees to sue for "wrongful discharge." *See, Lugo v. Matthew Bender & Co.*, 579 F.Supp. 638 (D.P.R.1984).

 Employees in Puerto Rico who are terminated without "good cause" are limited to the remedy provided by Puerto Rico's Discharge Indemnity Law.[9] P.R.Laws Ann. tit. 29, § 185a (1985). *See, Vargas v. Royal Bank*, 604 F.Supp. 1036, 1041 (D.P.R.1985); *Lugo v. Matthew Bender & Co.*, 579 F.Supp. at 640. Puerto Rico's Discharge Indemnity Law provides that every employee serving under a contract without a fixed duration and who is terminated without good cause can receive one month's salary, as well as one week's salary, for each year of service. *See, Rivera v. Security Nat'l Life Ins. Co.*, 106 D.P.R. 517, 527 (1977). Nor may the plaintiffs somehow ground their claims on an alleged breach of contract. *See, Vargas v. Royal Bank*, 604 F.Supp. 1036 (D.P.R.1985).

Even assuming that plaintiffs could show that they were discharged without good cause, they would be entitled only to the

> [I]f the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.
> *Young v. Southwestern Sav. & Loan Ass'n.*, 509 F.2d 140, 144 (5th Cir.1975); *Burney v. City of Pawtucket*, 559 F.Supp. 1089, 1097 (D.R.I.1983), *appeal dismissed*, 728 F.2d 547 (1st Cir.1984). The question is whether a reasonable person in the employee's position and circumstances would have felt forced to leave. *Pittman v. Hattiesburg Mun. Separate School District*, 644 F.2d 1071, 1077 (5th Cir.1981); *Burney v. City of Pawtucket*, 559 F.Supp. at 1097.

9. Good cause for discharge can include: (1) employee misconduct; (2) poor work attitude or

remedy provided in the Discharge Indemnity Law. Of course, Digital has already apparently compensated many of the plaintiffs pursuant to its own voluntary incentive retirement plan far in excess of what is required under the law.

## X

### PLAINTIFFS MAY NOT ASSERT A PRIVATE ACTION TO ENFORCE THEIR "CONSTITUTIONAL" RIGHTS

 Plaintiffs contend that the defendants, in violation of plaintiff's "constitutional rights," refused to permit plaintiffs to meet with Puerto Rico Department of Labor representatives and receive proper counseling. Amended Complaint, ¶ 15. This allegation fails to state a claim upon which relief can be granted. Plaintiffs purport to base their claim upon Article II, Section 19 of the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico.[10]

Neither the Legislature nor the courts of Puerto Rico have recognized a right to bring a private action to enforce rights enumerated in Article II, Section 19. Puerto Rico recognizes such a private action only under Sections 1, 8, and 16 of the Puerto Rico Constitution. *See, Colón v. Romero Barceló*, 112 D.P.R. 573 (1982); *Figueroa Ferrer v. Commonwealth*, 107 D.P.R. 250 (1978).

performance, (3) repeated violations of company rules, if a written copy has been given to the employee; (4) a full, temporary or partial closing of the employer's business; (5) technological changes, a reorganization, or changes in the style, nature or design of the employer's product; or (6) economically triggered reductions in force. P.R.Laws Ann. tit. 29, § 185b (1985).

10. Article II, Section states:
> The foregoing enumeration of rights shall not be construed restrictively nor does it contemplate the exclusion of other rights not specifically mentioned which belong to the people in a democracy. The power of the Legislative Assembly to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively.

The plaintiffs fail to show that the defendants have interfered with any fundamental right cognizable under these sections of the Puerto Rico Constitution. *See, Rodríguez v. Muñoz,* 603 F.Supp. 349 (D.P. R.1985) (political ideas); *People v. Turner Goodman,* 110 D.P.R. 734 (1981) (right to intimacy); *Commonwealth v. Hermandad de Empleados,* 104 D.P.R. 436 (1975) (inviolability of dwelling); *Aponte Martínez v. Lugo,* 100 P.R.R. 281 (1971) (freedom of speech).

Even assuming *arguendo* that Article II, Section 19 of the Puerto Rico Constitution prohibits employers from denying employees consultation with the Department of Labor to receive proper counseling, the facts alleged and testimony taken herein nevertheless fail to establish that Digital Corp. actually interfered with such a right.[11] *See also, Santos v. Miami Region, United States Customs Service,* 642 F.2d 21, 25 (1st Cir.1981); *Colegio Puertorriqueño de Niñas, Liceo Ponceño, Inc. v. Pesquera de Busquets,* 464 F.Supp. 761 (D.P.R.1979); *León Rosario v. Torres,* 109 D.P.R. 804 (1980); *Américo D. Miranda, Inc. v. Falcon,* 83 P.R.R. 708 (1961).

## XI

### THE CAUSE OF ACTION IS NOT APPROPRIATE FOR CERTIFICATION OF A CLASS ACTION

The amended complaint fails as a matter of law to comply with the requisite elements of Rule 23 as it fails even to begin to plead the rule's requirements. Fed.R.Civ.P. 23(a). Even assuming that plaintiffs could so plead, the cause of action is not appropriate for Rule 23 treatment.

Rule 23(a) establishes the preliminary criteria essential to the maintenance of a class action. For a lawsuit to be certified as a class action, the Court must determine that:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties are typical of the claims or defenses of the class.

Fed.R.Civ.P. 23(a). *See, generally, Snyder v. Harris,* 394 U.S. 332, 334, 89 S.Ct. 1053, 1055–56, 22 L.Ed.2d 319 (1969). If the four prerequisites of Rule 23(a) are met, the class may be certified if, in addition, the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Fed.R.Civ.P. 23(b)(3). "[W]hen individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." 7A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure:* Civil § 1778 (1972).

The plaintiffs in the instant case alleged physical and emotional injury of the type that is inherently so individual that no case can be "typical." First Amended Complaint, ¶ 14(b), (c) and (d). It strains credulity to imagine that any two members of the class could have suffered similar physical or emotional injury which would give rise to common questions of law or fact or typical claims or defenses.

Courts have denied class action certification in cases where such individual issues necessarily predominate. *See, McDonnell Douglas Corp. v. United States District Court,* 523 F.2d 1083, 1085 (9th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Mertens v. Abbott Laboratories,* 99 F.R.D. 38, 43 (D.N.H.1983); *In re Three Mile Island Litigation,* 87 F.R.D. 433 (M.D.Pa.1980); *Marchesi v. Eastern Airlines, Inc.,* 68 F.R.D. 500, 501 (E.D.N.Y.1975); *Wright v. McMann,* 321

11. Plaintiffs' assertion is plainly belied by the deposition testimony of named plaintiff Morales. Mr. Morales admitted in his testimony that he and other employees were not prevented from meeting with representatives from the Department of Labor. Morales Dep., at 57. He testified that Digital Puerto Rico actually arranged for the Department of Labor to visit the plant and address the employees while they were in the transition area. *Id.,* at 58–59.

F.Supp. 127, 137 (N.D.N.Y.1970), *aff'd in part and reversed in part on other grounds,* 460 F.2d 126 (2nd Cir.), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972).

In addition to having the requirement that common issues predominate, the proposed class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Plaintiffs fail to plead facts sufficient to show that a class action is superior to other methods of adjudication. Courts do not favor class actions in mass personal injury cases. *See, In re Tetracycline Cases,* 107 F.R.D. 719, 735 (W.D.Mo.1985); *In re Three Mile Island Litigation,* 87 F.R.D. at 441–442.

Plaintiffs fail to plead facts sufficient to show that the claims of the plaintiffs are typical of the claims of the class. Fed.R. Civ.P. 23(a)(3). Indeed, the claims or defenses of the named plaintiffs are most likely atypical of the claims or defenses of the class due to the diverse and personal nature of the plaintiffs' alleged injuries. *See, In re Three Mile Island Litigation,* 87 F.R.D. at 443. A class action is not appropriate in this case, due to the idiosyncratic nature of the plaintiffs' alleged injuries. *In re Tetracycline Cases,* 107 F.R.D at 723; *Mertens v. Abbott Laboratories,* 99 F.R.D. at 43; *In re Three Mile Island Litigation,* 87 F.R.D. at 442, n. 16; *Marchesi v. Eastern Airlines,* 68 F.R.D. at 501.

■ Plaintiffs also fail to plead facts sufficient to show that they are in a position to adequately represent or protect the interests of the class. Fed.R.Civ.P. 23(a)(4). Adequacy of representation depends on the qualification and interests of counsel for the class representatives, the absence of antagonism or conflicting interests, and a sharing of interest between class representatives and absentees. *See,* 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure:* Civil §§ 1765–1769; *see, generally, Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Dierks v. Thompson,* 414 F.2d 453 (1st Cir.1969). The named plaintiffs fail to show that plaintiffs' counsel is capable of competent

and vigorous prosecution of a major class action.

The claims of the class representative should be common to the claims of the class. The class representatives have failed to show that their interests and the interests of the absentee class members are not antagonistic, but shared. Under these circumstances the prerequisites of Rule 23 are not met.

## XII

### THE COMPLAINT IS REPLETE WITH SCANDALOUS MATTER AND SHOULD BE STRICKEN AND PLAINTIFFS' COUNSEL SHOULD BE SANCTIONED PURSUANT TO FED.R.CIV.P. 11 AND 28 U.S.C. § 1927

Pursuant to Fed.R.Civ.P. 12(f), the Court may order stricken from any pleading any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *Asay v. Hallmark Cards,* 594 F.2d 692, 696 n. 2 (8th Cir.1979); *Massachusetts ex rel. Bellotti v. Russell Stover Candies, Inc.,* 541 F.Supp. 143, 145 (D.Mass.1982). The Court possesses considerable discretion in deciding a motion to strike redundant, immaterial, impertinent or scandalous matter. *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1357 (5th Cir.1983). Scandalous material is that which "casts an adverse light on the character of an individual or a party." *OKC Corp. v. Williams,* 461 F.Supp. 540, 550 (N.D.Tex.1978), *cert. denied,* 449 U.S. 952, 101 S.Ct. 357, 66 L.Ed.2d 216 (1980).

The first amended complaint is replete with allegations of a redundant, immaterial, impertinent, and scandalous nature. For example, the amended complaint alleged that the plaintiffs were placed in a room described as a "concentration camp." Amended Complaint, ¶ 14(a). The plaintiffs also alleged that they were "tortured psychologically" and subjected to "brainwash" by the defendants. *Id.,* ¶ 14(c). Plaintiffs also asserted, to no legitimate purpose, that for some unspecified period Digital Corp.'s "operating revenues .. was (sic)

close to THEREE (sic) THOUSAND AND FIVE HUNDRED MILLIONS (to be exactly $3,486,420.00)...."

Plaintiffs seem to concede the scandalous and improper nature of their pleadings. The deposition testimony of plaintiff Morales failed to provide support for these allegations. The plaintiffs failed to respond to the defendants' observation that the complaint contains scandalous matter and that the plaintiffs are subject to sanctions under Fed.R.Civ.P. 11. Plaintiffs merely exclaimed that this matter "does not remit (sic) such comment." *See,* Memorandum of Law in Opposition at 6. The defendants' motion to strike is clearly well founded.

The federal courts do not provide a forum for mudslinging, name calling and "privileged" defamation.

 Prior to filing the instant motion, in correspondence to plaintiffs' counsel, defendants' counsel, Vicente J. Antonetti, informed plaintiffs' counsel, Jesús Hernández Sánchez, of the facts asserted in the affidavits accompanying this motion. *See,* Antonetti Aff. Nevertheless, Mr. Hernández refused to withdraw this suit. Moreover, Mr. Hernández admitted, in a telephone conversation, that he had failed to join Digital Puerto Rico as a defendant because if he had done so, he would have destroyed diversity and hence any basis for federal jurisdiction. *Id.* In these circumstances, sanctions are appropriate under Rule 11 of the Federal Rules of Civil Procedure.[12]

Rule 11, as amended effective August 1, 1983, provides in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief *formed after reasonable* inquiry it is well grounded in

fact ..., and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added)

The advisory committee's note to the 1983 amendment of Rule 11 regrets that the former rule was not "effective in deterring abuses.... The new language is intended to reduce the reluctance of courts to impose sanctions, ... by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions." (Citation omitted.) *See, Blair v. Shenandoah Women's Center,* 757 F.2d 1435, 1437 (4th Cir.1985).

 An attorney has an affirmative duty to investigate the facts prior to subscribing any motion or other paper. *See,* Fed.R.Civ.P. 11 advisory committee note. *See, Mohammed v. Union Carbide Corp.,* 606 F.Supp. 252, 261–262 (E.D.Mich.1985); *Weisman v. Rivlin,* 598 F.Supp. 724, 726 n. 2 (D.D.C.1984); *Brownlow v. General Services Employees,* 35 Fair Empl. Prac. Cas. (BNA) 572 (N.D.Ill.1984) [Available on WESTLAW, DCT database]; *Ferrer Delgado v. Sylvia de Jesús,* 440 F.Supp. 979, 982 (D.P.R.1976).

The 1983 amendments to Rule 11 abandoned the rules' "subjective test," *see, Nemeroff v. Abelson,* 620 F.2d 339, 350 (2nd Cir.1980), which has required that sanctions be imposed only if the signer of the document acted in bad faith: "If it

---

12. A court also has inherent power to impose sanctions for attorney misconduct pursuant to 28 U.S.C. § 1927, which provides in full:

Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*See, Roadway Express, Inc. v. Piper,* 447 U.S. 752, 756, 100 S.Ct. 2455, 2459, 65 L.Ed.2d 488 (1980).

appears to the court upon hearing that the pleading is *not* well grounded in fact or law and that there was no reasonable inquiry made before filing, the court is *required* to impose a sanction *without regard to whether the failure was willful or inadvertent." Weisman,* 598 F.Supp. at 726 (emphasis added).

That counsel may only have made a mistake, *Weisman,* 598 F.Supp. at 726, readily acknowledged and rectified his or her error, *Pudlo v. Director, Internal Revenue Service,* 587 F.Supp. 1010, 1012 (N.D.Ill. 1984), committed only a "clerical· error," *Kuzmins v. Employee Transfer Corp.,* 587 F.Supp. 536, 538 (N.D.Ohio 1984), or at all times acted in good faith, *Wells v. Oppenheimer & Co.,* 101 F.R.D. 358, 359 (1984), *vacated on other grounds,* 106 F.R.D. 258 (S.D.N.Y.1985), will not release him from sanctions.

■ Indeed, sanctions are *mandatory,* under Rule 11 where an attorney fails to make reasonable efforts to determine that his or her pleading is well grounded in fact. *See, Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1177 (D.C.Cir.1985); *Mohammed,* 606 F.Supp. at 261–262; *Sony Corp. v S.W.I. Trading, Inc.,* 104 F.R.D. 535 (S.D.N.Y. 1985); *Johnson v. Secretary, Department of Health & Human Services,* 587 F.Supp. 1117, 1120 (D.D.C.1984); *Weisman,* 598 F.Supp. at 726; *United States ex rel. U.S. —Namibia Trade & Cultural Council v. Africa Fund,* 588 F.Supp. 1350, 1352 (S.D. N.Y.1984); *Pudlo,* 587 F.Supp. at 1011.

In the instant case, defendants' counsel informed plaintiffs of the facts asserted in the affidavits accompanying this motion. Nevertheless, plaintiffs' counsel refused to withdraw this suit and admitted that his naming the proper party defendant would destroy this Court's basis for jurisdiction. As a result, the defendants were forced to incur the expense of bringing this motion. The plaintiffs have violated both the letter and spirit of Rule 11, as well as the prohibition of 28 U.S.C. § 1927 against vexatious litigation. The defendants are therefore entitled to an award of costs and attorneys' fees.

In view of the above, the Court hereby GRANTS defendants' motion in all respects. Defendants shall submit, within thirty (30) days, a bill of costs and attorneys' fees incurred in bringing this motion and defending this action, which shall be assessed against plaintiffs' attorney pursuant to Rule 11 of the Fed.R.Civ.P. and 28 U.S.C. § 1927.

The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.