Gail BURNEY, Plaintiff, Appellee,

v.

CITY OF PAWTUCKET, et al.,
Defendants, Appellants.

Nos. 83–1384, 83–1616.

United States Court of Appeals,
First Circuit.

Submitted on Petition for Rehearing
Dec. 30, 1983.

Decided Feb. 17, 1984.

As Modified on Denial of Rehearing
and Rehearing En Banc
March 14, 1984.

Donald G. Elbert, Jr., Asst. Atty. Gen., Providence, R.I., with whom Dennis J. Roberts II, Atty. Gen., Providence, R.I., was on brief, for defendants, appellants.

Lynette Labinger, Providence, R.I., with whom Roney & Labinger, Providence, R.I., was on brief, for Gail Burney and intervenor Celeste Bisson.

Before COFFIN and BOWNES, Circuit Judges, and SMITH,* Senior District Judge.

PER CURIAM.

The opinion of the court dated December 21, 1983, is withdrawn, and this opinion is substituted for it.

Gail Burney (Burney) brought this Title VII sex discrimination action in federal court against the City of Pawtucket and Raymond J. Shannon, Glenford Shibley, and William Tocco, who operate the Rhode Island Municipal Police Academy (Academy).

This opinion concerns appeals from a judgment and two orders of the district court in this case. Defendants appeal from the judgment filed in this court under Cause No. 83–1384. Defendants also appeal from an order granting plaintiff attorneys' fees, filed under Cause No. 83–1616. An appeal by the defendants from an order granting Bisson's petition for intervention in Cause No. 83–1384 was consolidated by this court with Cause No. 83–1616.

*Cause No. 83–1384* (Defendants' appeal from the judgment in Cause No. 83–1384):

We consider first Burney's motion to dismiss the appeal on the ground that the notice of appeal was premature. The complaint alleged that two tests, the pre-admission physical agility test (pre-test) and the post-physical performance test (post-test), required by the Academy, together with a demerit system, discriminated against women and were invalid under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). Having accumulated a substantial number of demerits for failure to keep pace with the Academy's physical training program, Burney was told on December 27,

1982, that she would be dismissed if she did not voluntarily withdraw. She signed a resignation form, but sought readmission the next day, claiming that her resignation had not been voluntary. Defendants refused to readmit her. On December 29, 1982, the court issued a temporary restraining order requiring the Academy to reinstate Burney. In its March 9, 1983, opinion, 559 F.Supp. 1089, the district court found that the pre-test, the physical training program with its system of demerits, and the post-test were discriminatory. Sometime between March 9 and March 14, Burney failed the self-defense test. On March 14, Burney filed a motion to supplement her amended complaint by adding a Count VI alleging that the self-defense test violated Title VII. A passing grade in the course was a prerequisite to graduation. On March 16, 1983, a judgment was entered in conformity with the court's opinion, which permanently restrained the Academy from dismissing Burney. At a conference held March 16, 1983, the court, alluding to the self-defense matter, said: "[t]he disposition of the case on a final basis, however, was more apparent than real ...." The court then, on March 22, 1983, granted Burney's motion to supplement her amended complaint, entered an order restraining defendants from dismissing Burney because she had failed the self-defense test, and consolidated the motion for a preliminary injunction with a trial on the merits as to Count VI. On May 9, 1983, the court entered a judgment which was identical with the March 16th judgment insofar as it related to Counts II and V, but which held the self-defense tests to be valid. Since Burney was properly dismissed for failing the self-defense test, the injunction restraining the Academy from dismissing her was dissolved.

On April 15, 1983, the Academy filed a notice of appeal from the judgment entered March 16th. No other notice of appeal was filed. There is no doubt that all of the errors now asserted by the Academy could have been reached on the appeal from the

* Of the District of Montana, sitting by designa-
tion.

judgment of March 16th. But, in view of the intervening events and the amended judgment entered on May 9, 1983, was the notice of appeal from the March 16th judgment effective?

Under 28 U.S.C. § 1291, courts of appeal have jurisdiction of appeals from "final decisions" of the district court. The requirements of a final decision are stated in Fed. R.Civ.P. 54(b) as follows:

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

■ At the time the judgment of March 16th was entered, both parties had introduced a new claim which was not decided by the judgment, and the judgment was subject to revision because of the claims asserted. Hence that judgment was not final. Many courts in varying situations have been faced with the problem created by the premature appeal, *i.e.*, the choice of relaxing the rules to accomplish some equitable purpose or giving full effect to the language of the rules and thus avoiding the problem of a district and an appellate court having jurisdiction at the same time[1] and preventing the erosion of the final judgment rule. Courts have not been unanimous in the solution of the premature appeal problem, but we think that the opinion of this court in *In re Harbour House Operating Corp.*, 724 F.2d 1 (1st Cir.1983), settles the question in this circuit. That decision clearly accepts the philosophy of those cases which favor a strict application of the rules. We therefore hold that the notice of appeal was premature, and the appeal is

*Dismissed.*

*No. 83–1616* (Defendants' appeals from the order granting Bisson's motion to intervene and from the order awarding attorneys' fees to Burney):

■ The Academy has appealed from the order permitting Bisson to intervene. Her motion to intervene was filed on July 19, 1983. The time to appeal from the judgment of May 9, 1983, expired prior to that time. We hold as a matter of law that a motion to intervene is never timely under Fed.R.Civ.P. 24(b) if filed after all rights to appeal have expired. Were it otherwise a court could at any time postpone finality by adding a new party. The order permitting intervention is

*Reversed.*

■■ On Defendants' appeal from the order granting attorneys' fees to counsel for Burney, the Academy argues that, since Burney failed the self-defense test and did not graduate, she was the losing party and is not entitled to attorneys' fees. Burney filed her action after defendants had refused her readmission to the Academy after what the district court termed a "constructive dismissal" for her accumulated demerits in the physical training program. This action did cause her reinstatement—it gave her the opportunity to try to graduate. That alone is enough in our opinion to make Burney the prevailing party. We agree with the court below that one of the important goals of Title VII is to protect the right to compete. Certainly it could not be contended in a case such as *Regents v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), where Bakke secured his admission to the University of California Medical School, that his status as the successful party was dependent upon his subsequent graduation.

■ The court awarded Burney a total of $25,067.68 in fees. These fees were for services rendered with respect to Counts II and V. No fees were awarded for services

---

1. That problem is illustrated here. A motion to intervene was filed on July 19, 1983. The judge granted it. If the notice of appeal of April 15th was effective, then the district court had no jurisdiction. If it was not effective, the court did have jurisdiction, and the judgment of May 9th was not final because the rights of the intervenor had not been adjudicated.

rendered in connection with Count VI. The "lodestar" method of calculation described in *Maceira v. Pagan,* 698 F.2d 38 (1st Cir. 1983), was used. Fees for lead counsel were calculated at the rates of $80 and $90 per hour and fees for a paralegal at $18 per hour. A multiplier of 10% was used to compensate for special factors, one of which here was the fact that the fee was contingent. In arriving at an hourly rate, the court conscientiously considered the factors involved, such as the novelty and difficulty of the case; preclusion of other work; nature of the fee arrangement; time constraints; results obtained; capacity of the attorney; undesirability of the case; and the customary fees in the community. It appears to us that the district court applied the correct criteria to the facts, and we defer to the district court's exercise of its discretion. *Id.* at 39.

The order of the district court fixing attorneys' fees is

*Affirmed.*

*Attorneys' Fees on Appeal:*

By a petition for rehearing Burney alleges that this court erred in not awarding her attorneys' fees on appeal. In this she is correct since the statute requires that in a Title VII case the court may, in its discretion, allow the prevailing party attorneys' fees and costs. It is the rule in this circuit that attorneys' fees should be allowed unless there are exceptional circumstances. *Sargeant v. Sharp,* 579 F.2d 645 (1st Cir.1978). We find no exceptional circumstances here, and this court erred in not allowing Burney's attorneys' fees on the appeal in Cause No. 83–1384.

Burney likewise prevailed in Cause No. 83–1616 since the order awarding attorneys' fees allowed by the district court was affirmed. However, we note that the Academy was the prevailing party in the appeal from the order granting Bisson's rights to intervention, and it was therefore entitled to attorneys' fees on that appeal, because Bisson's motion to intervene after the de-

2. *See* plaintiff's brief on appeal, p. 29.

fendants' right to file a notice of appeal had elapsed was unreasonable and groundless, notwithstanding the district court's decision to grant that motion. *See Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Normally Burney could not be charged with attorneys' fees payable by a losing intervenor, but in this case it is possible that the intervention of Bisson was brought about by Burney[2] through her lawyers for the purpose of preventing the appeal in Cause No. 83–1384 from becoming moot.[3]

It is probable, in view of the fact that plaintiff's lawyers were hired on a contingent fee basis, that any attorneys' fees recovered will go to them. It is likewise probable that the Academy, in view of its solvency, will pay such fees. Whether a judgment against Bisson would be collectible we do not know. Certainly if plaintiff's lawyers induced Bisson to intervene to protect Burney's judgment, which at that time had any monetary value only because an affirmance would protect the award of attorneys' fees, then plaintiff's lawyers ought not to be allowed to collect the fees due them in cash and leave the Academy with a judgment against Bisson of questionable value in satisfaction of its rights to attorneys' fees.

IT IS THEREFORE ORDERED that Cause Nos. 83–1384 and 83–1616 be remanded to the District Court with directions to:

1. Award such attorneys' fees to Burney as may be proper for the services rendered by her lawyers in the appeal in Cause No. 83–1384.

2. Determine attorneys' fees in Cause No. 83–1616, as consolidated, in accordance with the following:

    a. Fix the amount of attorneys' fees that should be awarded to Burney for the services rendered by her lawyers on the appeal of Cause No. 83–1616.

    b. Fix the amount of attorneys' fees that should be awarded to the Academy

3. *See* plaintiff's brief on appeal, p. 32.

for the services rendered by its lawyers in reversing the order permitting the intervention.

c. Determine whether Burney or her lawyers were responsible, in whole or in part, for the intervention of Bisson.

d. If (c) above is answered in the affirmative, strike a balance between the awards found under (a) and (b) above and enter judgment accordingly.

e. If (c) above is answered in the negative, enter judgment for the amount found in (a) above.