[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The matter now before this court is the consolidated appeals of respondents, the State of Rhode Island, the Rhode Island Commission on Standards and Training and the Rhode Island Municipal Police Academy (hereinafter the State) and the Newport Police Department and Chief Beebe (hereinafter Newport) from the July 19, 1988 decision of the Rhode Island Commission for Human Rights (hereinafter, the Commission). This court has jurisdiction pursuant to Rhode Island General Laws 1956 (1988 Reenactment) §42-35-15.
The facts of this case are as follows. Debra Vierra, (hereinafter Vierra) is a police officer who was employed by the Tiverton Police Department since 1982 as a probationary patrol officer. In November of 1982, Vierra failed to pass a physical agility test for admission to the Rhode Island Municipal Police Academy, (hereinafter the Academy) and was terminated. On July 1, 1983, Vierra filed a charge of sex discrimination with the Commission and the Equal Employment Opportunity Commission (hereinafter, EEOC) challenging the validity of the Academy's physical agility test. In 1983, the United States District Court declared the agility test discriminatory on the basis of sex.Burney v. City of Pawtucket, 559 F. Supp. 1089 (D.R.I. 1983),appeal dismissed 728 F.2d 547 (1st Cir. 1984). The parties signed a conciliation agreement resolving the charge whereby the Academy agreed to abandon the physical agility test and pay Vierra's costs and attorney's fees.
Almost one year later, the City of Newport hired Vierra as a temporary police officer, Vierra being first woman ever hired to serve in such capacity. After approximately one and one-half weeks of work, Newport sent Vierra to the Academy. The Academy provides training for recruits of all municipal police departments, except the City of Providence. Pursuant to R.I.G.L. § 42-28.2, each new police officer is required to successfully complete the Academy to advance from probationary to prominent status. To successfully graduate from the Academy, each candidate must obtain a minimum of 70% in each course. Re-tests are given to candidates who fail any given course. Course grades are not averaged.
Upon Vierra's arrival at the Academy, training Sergeant Edward Somerford, gave Vierra a tour of the station and indicated that she would have to use the men's room used by other police officers. Vierra understood that she was required to cut her hair to attend the Academy. When reporting for duty to Newport, Sergeant Somerford informed Vierra that her hair failed to meet regulations. In a memo, Somerford informed Chief Beebe of Vierra's non-compliance although it was the general practice of Newport to inform a direct supervisor of such infractions. Nevertheless, Vierra cut her hair to the approval of Newport and was not disciplined for the week in which her hair failed inspection.
On August 8, 1984, the Police Officers Commission on Standards and Training promulgated a mandatory requirement that a police recruit must learn to swim and pass the required test before they can graduate from the Academy. Said test required recruits to swim 250 yards. If at the end of the Water Safety Course the recruit fails such requirement, remedial help would be given. The recruit must satisfactorily pass the course to obtain certification.
As required, Vierra participated in the Water Safety course. During the instructional phase, the instructor denied Vierra's request to use a personal floatation device. On November 9, 1984, the day of the written examination and the demonstration test, the class was instructed to do ten lengths of the pool, equal to 250 yards. Vierra completed only three and one-half laps. Vierra also observed at least three other recruits fail to complete the 10 lap swim.
One week later, on November 13, 1984, Mary Ann Votta told an assembled group of recruits that "everyone had passed." However, three days later, Mr. Shannon advised Vierra that she had not passed swimming. Vierra met with Mr. Shannon, Mr. Shebley and Patrick McHugh as directed and was advised that she would have to make up the swimming and would be given extra time in the pool. Vierra requested permission to meet with either Mr. Tencher or Ms. Votta to arrange her extra pool hours. However, Mr. Shebley insisted that he would speak to Mr. Tencher to set up the hours for Vierra. Despite the conversation, Mr. Shebley failed to give Vierra a schedule. Instead, Vierra was told to be at the pool on the Friday after Thanksgiving with her equipment. Vierra attended as instructed and was informed that she was being given a make-up test. Per the request of Mr. Shannon and without the consent of Vierra, Vierra's test was videotaped. (This was the first time a test or re-test was videotaped.) Unfortunately, Vierra failed the second test. Ms. Votta testified that Vierra is the only person in the history of the Academy to fail swimming after a re-test. Traditionally, those recruits who fail the initial swim test completed the required extra hours and were certified as completing the Basic Water Safety Course. Subsequently, Ms. Vierra left the Academy and attempted to contact Chief Beebe and an Academy Administrator. Chief Beebe spoke with the Academy and told Vierra that the decision was final and there was nothing she could do about it.
Sometime between 11/23/84 and 12/6/84, prior to Vierra's termination, Mr. Shannon spoke with Chief Beebe regarding Vierra and forwarded Chief Beebe documents including a copy of the EEOC determination of Vierra's previous charge against the Academy. On December 14, 1984, Vierra received a letter from John Connors, Jr., City Manager of City Newport, terminating her employment. Thereafter, Vierra obtain legal counsel and obtained an injunction allowing her to return to the Academy completing all other aspects of the program. Pursuant to the injunction, Vierra completed the rest of the Academy.
In November 1985, the town of Tiverton hired Vierra. As such, Vierra petitioned the Academy to allow her to successfully complete the swimming component of the program. The Academy denied such request and insisted Vierra complete the entire course again.
On July 11, 1985, Vierra filed a charge with the Commission against Newport and the Chief of Police, John Beebe, alleging Newport discriminated against her with respect to terms and conditions of employment and terminated her because of her sex and in assistance to the retaliation of the State respondents. Four days later, on July 15, 1985, Vierra filed a charge with the Commission against the State of Rhode Island, the Rhode Island Commission on Standards and Training and the Rhode Island Municipal Police Academy alleging that the State respondents discriminated against her with respect to terms and conditions of employment because of her sex and in retaliation for protected activity thereby violating R.I.G.L. § 28-5-7.
The Commission investigated the charges and found probable cause for both charges. The Commission issued a complaint and notice of hearing. From September 1986 to January 1987, the Commission held seven separate hearings. After considering the evidence presented by the parties, the Commission issued a 17 single-space page decision in favor of Vierra. The Commission found that Newport discriminated against Vierra on the basis of her sex and the State respondents retaliated against Vierra because she had previously filed a charge of discrimination. The Commission ordered the Academy to issue a certificate of graduation effective December 20, 1984 and to correct all Vierra's records to indicate her graduation. The Commission ordered Newport to offer Vierra the next available position as a police officer and give her retroactive seniority to the date of her initial appointment. Lastly, the Commission ordered both respondents to pay Vierra's back pay as well as benefits with interest.
Both Newport and the State respondents have separately appealed to this Superior Court. Upon agreement of the parties, the matters have been consolidated and heard by a single justice in Providence County. The Superior Court's review of an administrative appeal is governed by Rhode Island GeneralLaws 1956 (1988 Reenactment) § 42-35-15 which provides in pertinent part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This court cannot substitute its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact. Costa v. Registrar ofMotor Vehicles, 543 A.2d 1307 (R.I. 1988). Such review is limited to an examination of the record to determine if there is any legally competent evidence to support the agency's decision and, if so, the agency's determination must be upheld. BlueCross Blue Shield v. Caldarone, 520 A.2d 969 (R.I. 1987). The court must uphold the agency's decision even though reasonable minds might have reached a contrary result. Berberian v.Department of Employment Security, 414 A.2d 480 (R.I. 1980).
Newport contends that the Commission erred when concluding that Newport discriminated against Vierra in violation of R.I.G.L. § 28-5-6. Newport submits that it had to terminate Vierra from employment because the Academy refused to certify Vierra. Newport should not be held responsible for the conduct of the Academy. This court disagrees.
When considering employment discrimination claims, this court is required to look to federal court decisions for guidance.Newport Shipyard v. R.I. Com'n for Human R., 484 A.2d 893 (R.I. 1984). Although complainant was required to establish a prima facia case which creates a rebuttable presumption that the employer unlawfully discriminated against her, pursuant to our Supreme Court in U.S. Postal Service Board of Governors v.Aikens, 460 U.S. 711 (1983), this court shall not consider whether Vierra presented a prima facia case of discrimination. Instead, this court shall address whether substantial evidence in the whole record supports the Commission's conclusion that Newport terminated Vierra for discriminatory reasons.
Newport and the State respondents do not challenge the Commission's finding that the Academy illegally retaliated against Vierra when discharging her from the Academy and refusing to admit her to a subsequent class to complete the swimming component of the program because Vierra filed an earlier sex discrimination charge against the State respondents. Instead, Newport submits that it cannot be held liable because it relied upon the retaliatory conduct of the Academy when terminating Vierra. Our Supreme Court in Price Waterhouse v. Hopkins, 109 S.Ct. 1775 (1989) held that an employer who has relied upon unlawful considerations such as sex discrimination when reaching its decision to terminate an employee will not be held liable if it can prove by a preponderance of the evidence that it would have made the same decision even if it had not allowed gender to play such a role. Therefore, Newport must prove that its legitimate reason for discharge, standing alone, would have induced it to make the same decision. Id. at 1792.
According to the testimony of Newport City Manager, John Connors, Jr., all the components listed in the termination letter contributed to the decision to terminate Vierra. Mr. Connors testified that he terminated Vierra for the following reasons: she did not possess the minimum qualifications because she did not graduate from the Academy; she had established an unsatisfactory employment and personal record; she repeatedly failed her swimming test; she had consistent difficulties with the agility test; she had a poor attitude toward instructors and Chief Beebe and she had shown emotional immaturity. In order to avoid liability, Newport must prove that its legitimate reasons, standing alone, would have induced it to discharge Vierra.
The record is clear that Vierra failed her swimming test and did not graduate from the Academy. However, as the Commission noted in its decision, the agility test used by the Academy has been found to be unlawfully discriminatory. Burney v. City ofPawtucket, 559 F. Supp. 1089 (D.R.I. 1983). Upon review of the whole record, this court finds that the parties failed to present credible evidence to support Vierra's poor attitude, unsatisfactory employment and personnel record, and emotional immaturity. Although Vierra had been reprimanded for minor infractions, she was never formally disciplined. Therefore, Newport failed to prove that any one of these reasons for termination, standing alone, would have induced it to terminate Vierra. As such, evidence in the whole record supports the Commissions' finding that Newport terminated Vierra because of her sex and in furtherance of the unlawful retaliation by the State respondents.
Newport and the State respondents argue that the State Police Officers Commission on Standards and Training and the Academy are not agents of the City of Newport. Absent an agency relationship, the State and Newport are not liable for the conduct of either party. Respondents erroneously rely upon tort law and the element of "control" to establish liability under the Fair Employment Practices Act.
This court directs the respondents' attention to the explicit language of the Fair Employment Practices Act, (hereinafter the Act). Pursuant to § 28-5-6-(2)(A) of the Act, an agency relationship is not required to invoke liability upon the respondents. To the contrary. The Act defines "employer" broadly, to include "the state and all practical subdivisions thereof . . . and any person acting in the interest of an employer directly or indirectly." Substantial evidence in the whole record indicates that Newport acted directly in the interest of an employer when terminating Vierra from employment. Furthermore, the Academy acted directly or indirectly in the interest of Newport when training Vierra to be a police officer as mandated by R.I.G.L. § 42-28.2. Evidence in the whole record supports the Commission's finding that the State and Newport constitute an "employer" within the Act and thus fall within the jurisdiction of the Act.
The State submits that Vierra's suit is barred by the doctrine of res judicata. The State argues that in 1988, Vierra came before our Supreme Court and sought declaratory and injunctive relief against the same State parties based upon the same allegations of retaliation and discrimination seeking the same claims for relief. Vierra v. Rhode Island municipal PoliceAcademy et al., 539 A.2d 971 (R.I. 1988). The Supreme Court affirmed the Superior Court's decision granting a permanent injunction enjoining the same State respondents from refusing to grant Vierra a certificate of graduation from the Academy. The State submits Vierra should not be given a second bite of the State's apples.
The doctrine of res judicata is a vehicle used to eliminate repetitive litigation. Perez v. Pawtucket Redevelopment Agency,111 R.I. 327, 302 A.2d 785 (1973). Four criteria must be met before res judicata effect will be accorded to a prior judgment. These criteria are: (1) identity of parties, (2) identity of issues, (3) identity of claims for relief, and (4) finality of judgment. Estate of Bassett v. Stone, 458 A.2d 1078 (R.I. 1983). However, a party may be estopped from raising res judicata defense if not properly plead. Goloskie v. Sherman,108 R.I. 730, 279 A.2d 409 (R.I. 1971).
Pursuant to Super. R. Civ. P. 8(c), res judicata is an affirmative defense. As such, res judicata must be affirmatively plead in the answer or raised by a proper motion or said defense is waived. Rodriques v. Santos, 466 A.2d 306 (R.I. 1983). Vierra filed her charges with the Commission in July of 1985. The Commission found probable cause for said charges, issued a complaint and then held numerous hearings from September 1986 through January 1987. Almost seven years has transpired since Vierra filed her charges with the Commission. The State had ample opportunity to properly raise the issue of res judicata. Having waited almost seven years to do so, this court finds that the State has waived the affirmative defense of res judicata and this court refuses to entertain said motion now.
The State contends that the Commission erred when holding the State respondents jointly and severally liable for Vierra's back pay and benefits plus interest. The State contends that the Commission's order forces the State into an employment contract relationship with Vierra despite the State's failure to waive its sovereign immunity with respect to contract claims. The court finds this argument without merit.
As previously mentioned, the legislature clearly intended the State to be held liable for actions brought pursuant to the Fair Employment Practices Act by defining and an "employer" as "any state and all political subdivisions." R.I.G.L. § 28-5-6(2)(A). Furthermore, the legislature empowered the Commission with the authority to "take such further affirmative or other action as will effectuate this chapter, including, but not limited to . . . back pay." R.I.G.L. § 28-5-24. "Back pay shall include the economic value of all benefits and raises to which an employee would have been entitled had an unfair employment practice not been committed." Id. Therefore, pursuant to the plain language of R.I.G.L. § 28-5-6(2)(A) and § 28-5-24, the Commission has the authority to hold the State respondents jointly and severally liable for Vierra's back pay and benefits.
Lastly, the State submits that the Commission is without the authority to order the State to pay Vierra interest on said judgment because the State has not waived its sovereign immunity with respect to the payment of interest. The State relies onAndrade v. State, 448 A.2d 1293 (R.I. 1982) standing for said proposition. This court disagrees.
R.I.G.L. § 9-21-10 provides for twelve per cent (12%) interest per annum on decisions for pecuniary damages running from the date the cause of action accrued. The court in Andrade
prohibited the application of the prejudgment interest statute because the Tort Claims Act imposed liability only for damages, and prejudgment interest is purely statutory. However, the Fair Employment Practices Act does not limit the complainant's recovery. Instead, the Act grants the Commission broad, remedial powers. R.I.G.L. § 28-5-24. The legislature further provides that said Act be construed "liberally for the accomplishment of the purposes thereof." R.I.G.L. § 28-5-38. Nothing within the Act or R.I.G.L. § 9-21-10 prohibit the application of the prejudgment interest statute to discrimination cases. Therefore, this court finds that is within the Commission's jurisdiction and statutory authority to order the State to pay interest on Vierra's back pay and benefits.
For the above mentioned reasons, this court affirms the Commission's decision and denies and dismisses respondents' appeals. Counsel shall prepare an appropriate judgment for entry.