Francisco VARGAS, et al., Plaintiffs,

v.

The ROYAL BANK OF
CANADA, Defendant.

Oscar TEJERA, et al., Plaintiffs,

v.

The ROYAL BANK OF
CANADA, Defendant.

Civ. Nos. 84–1502(RLA), 84–1503(RLA).

United States District Court,
D. Puerto Rico.

March 14, 1985.

A.J. Amadeo-Murga, Hato Rey, P.R., for plaintiffs.

Charles P. Adams, Brown, Newsom & Córdova, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

These consolidated actions were filed by two dismissed employees of The Royal Bank of Canada (hereinafter referred to as "the Bank"). Defendant has moved for summary judgment alleging there is no valid claim for either breach of contract or defamation.

The Court, having reviewed the arguments set forth by all parties involved in these proceedings, hereby finds as follows.

## THE FACTS

1. On August 15, 1980, the Bank issued Disciplinary Procedures-Guidelines (Form J1–61–15) setting forth internal procedures to be followed in cases where disciplinary action against an employee was being considered.

2. On July 28, 1982, the Bank issued Employee Rules governing the conduct of persons working at the Bank (Form J1–61–11).

3. The Bank issued a Policy Statement dated May 23, 1983 (Form J0–21–01) whereby it advised of its right to terminate the services of any person in its employ. Notice in writing or payment was to be made depending on the grounds for termination.

4. On May 28, 1983, plaintiff Oscar Tejera (hereinafter referred to as "Tejera") was given an overall performance rating of "very good" in an evaluation form ranging from excellent, very good, good, improvement required, and not acceptable. Tejera's evaluation form included a statement from his reviewing officer to the effect that he was "a very responsible employee who by his own initiative collects and makes calls without remuneration."

5. On November 26, 1983, the overall work performance for plaintiff Francisco Vargas (hereinafter referred to as "Vargas") was rated "good". In the form, the evaluating officer stated Vargas was very helpful and cooperative and "could be considered for a position that bears more responsibility ..."

6. By letters dated February 29, 1984 and subscribed by M.G. Payn, Regional Manager, both Vargas and Tejera were suspended from their duties and responsibilities at the Bank without pay until further notice, effective that same day. The reason given for the suspension was that the defendant had become aware of violations to its Code of Conduct and to the Personnel Manual Regulations.

7. By letters dated March 30, 1984 and April 23, 1984, Tejera and Vargas, through their counsel, requested to be informed of

the precise grounds for their suspension pursuant to the Rules and Regulations then in effect at the Bank in order to be in a position to defend themselves against any charges.

8. Approximately three weeks later, on May 15, 1984, defendant's counsel responded to plaintiffs' legal representative advising him as follows:

As a consequence of a reorganization of the Bank's operations, positions are not available for the subject employees and the Bank has decided to terminate their employment effective May 15, 1984. The Bank will pay the employees all salaries and benefits for the period of their suspension, as well as severance compensation, as provided by the law ...

9. Plaintiffs were also sent a letter dated May 15, 1984 whereby they were informed by the Bank that it had decided to cease their employment effective that day.

10. At the time they were discharged on May 15, 1984, both Vargas and Tejera had been employed with the Bank for approximately seventeen years.

11. Plaintiffs' employment with the Bank had no fixed term.

## FIRST ISSUE

### BREACH OF CONTRACT

The issue presently before us is whether the Rules and Regulations of the Bank establishing internal procedures for termination of its employees can serve as a basis for a cause of action for alleged breach of contract.

### Act No. 80

The ever present interest of the Government of Puerto Rico in protecting individuals in their employment led to the enactment of what is presently Act No. 80 of May 30, 1976, 29 L.P.R.A. § 185a–i, which provides for indemnity in cases of dismissal without cause.

■ Since its original enactment, this legislation sought to strike a balance between the freedom of choice inherent to an employer and the social need to do away with arbitrary terminations of employment. *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 540–41 (1979), citing a report prepared by the Civil Rights Commission in August of 1959.

The statute provides that employees, hired for an indefinite period of time and dismissed without "just cause" as defined in 29 L.P.R.A. § 185b, shall be liable for an indemnity computed on the basis of the length of their service. 29 L.P.R.A. § 185a.

Dismissal compensation is an important event of social justice due to man as a factor of production, insofar as he, as a worker, is a minor participant of the fruits of the enterprise, and is not entitled to the liquidation of dividends, benefits, or accrued interests in the worthy task of earning, with his effort, the daily bread he shares with his family and for whom the act of saving is a mere dream devoured by privation. When unemployment dooms a human being and his family to hunger or to indignity, we must be very demanding before depriving him of the protection he has gained through our social legislation. Only a very serious offense would justify the suspension of the modest relief directed to support a family in the transition to a new job without becoming a burden for the State. There must be a very clear justification to dismiss him from his job without giving him this minimal payment for his years of service which represent his only asset to the structure of production: his energy, his intellectual and physical capacity during his most fruitful years, in short, his health which time deteriorates.

*Srio. del Trabajo, supra,* 108 D.P.R. at 547 (Official Translations of the Opinions of the Supreme Court of Puerto Rico, Vol. 8, pp. 573–74).

■ Act No. 80 has been construed as providing an exclusive legal remedy. The employer's liability for an unjust dismissal is limited to the payment of the monies owed under the formula established by Section 185a, which is comprised of one month's salary plus "an additional progres-

sive indemnity equivalent to one week for each year of service."

■ An employer shall not be amenable to suits for dismissals other than under Act No. 80 actions, unless he has incurred in some type of tortious conduct separate or independent from the termination of employment as such. *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 527 (1977) (Official Translations of the Opinions of the Supreme Court of Puerto Rico, Vol. 6, p. 727, 738). The Supreme Court of Puerto Rico has held that: "In the cases of ordinary suspension from work without cause, no civil liability is imposed on the employer. He is merely under the obligation of paying ... one month's salary as indemnity." *Id.*

■ Act No. 80 does not even provide for reinstatement in situations of dismissal without just cause. *Id.*

### Rules and Regulations

■ Act No. 80 sanctions the use of internal rules and regulations by employers in their day-to-day operations to assist them with the normal functioning of the enterprise and even allows for dismissal of employees based on violations to reasonable regulations.[1] *See, Srio. del Trabajo, supra,* 108 D.P.R. at 542. However, it is our understanding of Act No. 80 that departure by an employer from its internal regulations can only give rise to liability under the terms of Act No. 80 if the termination is found tantamount to a dismissal without cause and not to a suit for breach of contract.

In *Srio. del Trabajo, supra,* the Supreme Court of Puerto Rico held that a dismissal for a first offense based on grounds that did not affect the safety or normal operation of the establishment was not for cause even if provided for by the employer's internal regulations.

The employee in *Srio. del Trabajo, supra,* was dismissed because he sought an eight-day leave of absence on false grounds although he had been employed with the company for seventeen years with a clean record. The employer applied Rule 34 of its Disciplinary Regulations which penalized "making a false or fraudulent statement on employment application forms or company records" with dismissal. The Supreme Court of Puerto Rico found that such drastic remedy for a single, isolated offense was disproportionate in a case where the lie posed no threat to the normal operation of the establishment. The Court found that, under such circumstances, the dismissal had been "unreasonable and arbitrary".

> The employer, who has the burden of proving the existence of just cause, did not fulfill his obligation because Rule 34, on which he grounded his case, was basically insufficient. Said Rule does not meet the reasonability requirement established by /29 L.P.R.A. § 185b(c)/ for the rules and regulations of an establishment. Hence, it is ineffective.

*Srio. del Trabajo, supra,* 108 D.P.R. at 545 (Official Translations of the Opinions of the Supreme Court of Puerto Rico, Vol. 8, pp. 572–73) (footnotes omitted).

We see no difference between the circumstances present in *Srio. del Trabajo, supra,* and our case. If the misapplication of an internal regulation by the employer could only give grounds to an Act No. 80 relief, departure by defendant herein from the internal procedures established for dismissal can only be tantamount to a discharge without cause if no justification is established by the employer that meets the 29 L.P.R.A. § 185b standards.

### Other Jurisdictions

Plaintiffs' argument for a cause of action for violation of their contractual rights is based on the existence of procedures at the

---

1. 29 L.P.R.A. § 185b provides, in pertinent part, as follows:

 Good cause for the discharge of an employee of an establishment shall be understood to be:

 ... (c) Repeated violations by the employee of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been timely furnished to the employee.

Bank providing employees with the right to notice and opportunity to be heard when subject to disciplinary action. Other jurisdictions have addressed this same issue but have reached contradictory results.

An analysis of the pertinent cases in other states seems to indicate that, in certain instances, employment policies embodied in employee manuals will entail responsibility based on the principles of either an implied contractual obligation, tort or equitable estoppel. *See*, Annot., 33 A.L.R. 4th 120 (1984) and Annot., 12 A.L.R. 4th 544 (1982). These theories, however, respond to the interest of these particular States in providing employees hired at will with a certain degree of security against being dismissed except for cause.

> The common-law rule regarding the termination of an at-will employment contract is that if the employment is not for a definite term, and if there is no contractual or statutory restriction on the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause, without incurring liability for wrongful discharge. Few legal principles have been better settled than the at-will concept, whose roots date back to the 19th century laissez-faire policy of protecting freedom to contract. In recent years, however, there has been a growing trend toward a restricted application of this rule in order to comport with express and implied public policy, as well as statutory concerns. Some jurisdictions have been willing to depart from the traditional contract rule of terminability at will and to impose an implied contractual duty not to discharge an employee for reasons regarded as violative of public policy or to recognize the tortious nature of a discharge violative of public policy, whether such policy is expressly codified or implied.

Annot., 33 A.L.R. 4th, *supra* at 123 (footnotes omitted).

## CONCLUSION

 This being an issue of State law, we are forced to apply the legal and public policy principles embodied in the pertinent local statute. It appearing this matter has been taken care of within our jurisdiction by special legislation, we must defer to the judgment of the legislature in establishing fixed remedies for dismissals without cause.

 Plaintiffs in this action were hired for indefinite periods of time. No evidence has been presented to controvert defendant's allegations that they were serving at the will of the Bank.

Accordingly, it is our finding that in this action the exclusive remedy for dismissal without cause lies with Act No. 80 and not on the basis of a contractual liability arising from internal rules and regulations.[2]

### SECOND ISSUE

### DEFAMATION

Each complaint at Paragraph 9 avers plaintiffs' termination from employment was based on false grounds and that defendant "maintained publicly and stated to third persons that the dismissal was due to plaintiffs' wrongful conduct." Plaintiffs then requested monetary relief at Paragraph 11 for loss of reputation allegedly caused by their suspension, dismissal and the manner in which these took place.

In their respective opposition to defendant's motion for summary judgment, at Page 7 Tejera and Vargas contend that a controversy exists as to whether or not they were "libeled, defamed, or injured" in their dignity and honor by the defendant.

Upon reviewing the allegations of both complaints, plaintiffs' opposition to the defendant's motion for summary judgment and the documents in file submitted by all parties, the allegations pertaining to defamatory communications can be summarized as follows: (1) suspension and dis-

---

**2.** The Court having reached this conclusion, it is not necessary to go into the merits of whether or not the Bank complied with its internal regulations for the suspension and dismissal of these two employees.

missal; (2) communication to fellow workers, (3) communication to the Department of Labor and Human Resources of the Commonwealth of Puerto Rico, (4) communication to a certain Héctor Díaz.[3]

The Libel and Slander Statute of 1902, 32 L.P.R.A. §§ 3141–3149, provides for a civil action for damages due to libel and slander.

Where pertinent, Section 3142 defines libel as "the malicious defamation of a person made public by writing, ... tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him ..."

Slander, on the other hand, is defined in Section 3143 as "a false and unprivileged publication other than libel, which imputes to any person the commission of a crime, or tends directly to injure him in respect to his office, profession, trade or business, or which by natural consequences causes actual damages."

■ Libel refers in general terms to the written communication, whereas slander is applied to oral defamation. W.L. Prosser, *Handbook of the Law of Tort*, Sec. 111 at 739 (1971); Robert D. Sack, *Libel, Slander, and Related Problems*, Sec. II.3 at 43 (1980).

■ Libel and slander are involved with defamation, or the invasion in the interest of reputation by means of a communication "which tends to hold the plaintiff up to hatred, contempt or ridicule, or to cause him to be shunned or avoided." Prosser, *supra* at 739 (footnote omitted). "Defamation deals with expression ... that injures reputation." Sack, *supra* at 45 (footnote omitted). Accordingly, only those communications which in some manner injure plaintiffs' reputation will serve as grounds for a suit for defamation.

■ Another prerequisite for a defamation suit is that the information be either read by a third party in a libel suit or heard in a slander action. This is called "publication" and is explained as follows:

Since the interest protected is that of reputation, it is essential to tort liability for either libel or slander that the defamation be communicated to some one other than the person defamed. This element of communication is given the technical name of "publication," but this does not mean that it must be printed or written; it may be oral ...

Prosser, *supra* at 766 (footnote omitted).

According to *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 427 (1977), a libel suit filed by a private individual will require that the defamatory information be false, the publication negligently made, and that real damages to the plaintiff ensue.

*Suspension/Termination*

It is important to note that plaintiffs refer to their suspension and dismissal interchangeably in their complaint, as well as in their opposition to summary judgment. However, within the context of their defamation claim, these two occurrences must be kept separate since only the suspension letter contains purportedly defamatory statements. The termination notice has no information that may be deemed injurious to their reputation.

The February 29, 1984 correspondence makes reference to certain violations of the Code of Conduct and Personnel Manual as grounds for suspension until further notice. On the other hand, the termination letter dated May 15, 1984 simply states that the Bank had decided to cease their employment at the Bank effective that same day. The only additional information in the termination letter was to the effect that their severance compensation would be available upon request.

---

**3.** At Page 8 of their opposition to the motion for summary judgment, plaintiffs also point to an inspection report of the Installment Loan Department conducted on February 15, 1984 prepared by S.A. Crookston which refers to plaintiffs' integrity as being "open to question." However, there is no evidence in the record that the contents of this document were ever revealed to any persons. Thus, the requirement of publication is not met.

The Bank's counsel, on May 15, 1984, informed that the discharge was caused by a reorganization of the Bank's operations as a result of which no positions were available for plaintiffs. Once again, defendant made clear that it would pay plaintiffs "all salaries and benefits for the period of their suspension, as well as severance compensation, as provided by law." We see no derogatory information in the May 15, 1984 correspondence. Therefore, we will limit our review for purposes of the defamation claim to the communication informing plaintiffs herein they had been indefinitely suspended.

### Communication to Fellow Workers

Plaintiffs claim their indefinite suspension was revealed to fellow-workers, which caused them emotional and mental anguish.

The only evidence to support this contention appears at Paragraph 8 of the affidavit subscribed by both plaintiffs and attached to their opposition to defendant's motion for summary judgment. In their joint statement, plaintiffs stated that because they were dismissed for alleged violations of the Rules of Conduct, they suffered mental anguish, loss of self-esteem, shame, and loss of face in front of their fellow employees "who were informed" of plaintiffs' suspension. Fellow employees made a collection on plaintiffs' behalf and two weeks after their suspension delivered Fifty-Nine Dollars ($59.00) to each.

■ Even assuming it was the Bank who informed the other employees of plaintiffs' suspension, we find that this communication cannot, without any further evidence, give rise to a slander action.

■ The statute specifically provides that malice shall not be presumed in communications "between persons having business in partnership, or other similar association". 32 L.P.R.A. § 3145. This provision embodies conditional or qualified privileges for communications made under specific circumstances. *Chico v. Editorial Ponce, Inc.,* 101 D.P.R. 759, 768 (1973);

*Díaz v. Puerto Rico Railway, Light and Power Co.,* 63 D.P.R. 808 (1944).

■ Two types of privileges exist in defamation cases, commonly known as absolute privileges or immunities and conditional or qualified privileges.

Absolute privileges are properly classified as immunities since they are based on the personal position or status of the actor. They have been described as follows:

> These "absolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests.

3 Restatement (Second) of Torts § 584 at 243 (1977).

Conditional or qualified privileges, on the other hand, seek to protect the circumstances in which the statement is made.

> They are more properly to be classified as privileges, since they arise out of the particular occasion upon which the defamation is published. They are based upon a public policy that recognizes that true information be given whenever it is reasonably necessary for the protection of the actor's own interests of a third person or certain interests of the public.

*Id.*

■ It is our understanding that Section 3145 covers communication to fellow workers of reasons for disciplinary action taken against an employee and, thus, they are privileged. Once the privilege attaches, it is incumbent upon plaintiffs to establish by extrinsic evidence the elements for their defamation claim. *Quiñones v. J.T. Silva Banking and Commercial Co.,* 16 P.R.R. 661, 665, 667 (1910); *Jiménez v. Díaz Caneja,* 14 P.R.R. 9, 17–18 (1908). Plaintiffs then had the burden of establishing, that the privilege was lost by abuse on the part of the employer. Annot., 60 A.L. R.3d 1080, 1088–89 (1974).

Plaintiffs have failed to produce any evidence to justify striking down the qualified

privilege applicable to the purported communication between persons in the working environment. Apart from this conclusory allegation of the affidavit, there is no evidence in the record to sustain this allegation.

■ This particular privilege seeks to protect the necessary flow of information within a place of employment, and given the lack of evidence in this case, we are not persuaded that the policy it seeks to protect should give way to a defamation claim.

### Department of Labor

At his deposition, Tejera testified defendant had informed the reasons for his suspension to the Department of Labor. However, the agency learned about this matter at Tejera's request when he submitted the suspension letter for collection of unemployment benefits.[4] It is evident that it was Tejera who presented the evidence and grounds for his suspension to the State agency.

The only other instance of publication claimed by Vargas was the Department of Labor. Vargas admitted under oath, however, that the Bank supplied the information pertaining to the alleged irregularities as grounds for suspension after he filed the request for unemployment benefits.[5]

■ "Ordinarily the defendant will not be liable for any publication made to others by the plaintiff himself ..." Prosser, *supra* at 771 (footnotes omitted). Accordingly, Tejera cannot assert a defamation claim based on his own publication.

As to Vargas, defendant supplied the details of the suspension only after plaintiff filed his application with the Department of Labor. Defendant merely complied with a petition from a State agency responsible for processing requests for unemployment benefits, and we are reluctant

to impose liability under such circumstances.

Furthermore, the local statute specifically provides that communications will not be held or deemed malicious when made in "any judicial proceeding or in any other proceeding authorized by law" if made "in the proper discharge of an official duty" or anything said during the course of a judicial, official or other proceeding. 32 L.P.R.A. § 3144.[6]

■ We find that the proceedings before the Department of Labor fall within this exception, and Vargas has failed to produce any evidence to justify the departure from this provision allowing for a qualified privilege.

### Third Parties

At Pages 29–30 of his deposition, Tejera related an alleged incident whereby one of defendant's employees informed a certain Héctor Díaz that plaintiff was no longer employed there and upon being asked why, the employee stated that he had been suspended.

Even assuming this particular communication was defamatory, plaintiff still has the burden of establishing that it was negligently made and it caused him real damages. *Torres Silva, supra,* 106 D.P.R. at 427.

■ We find the allegations on this point are overbroad and conclusory and not sufficient to defeat a request for summary judgment.

Tejera further assumed other persons may have called the Bank.[7] This allegation is totally speculative and cannot serve as grounds for opposing a summary judgment request.

Vargas made no allegation as to publication to third parties. His arguments were limited to the communication to the Depart-

---

**4.** Deposition, p. 27.

**5.** Deposition, pp. 32–35.

**6.** In some cases, claims for unemployment compensation have been held privileged as if made

in quasi-judicial proceedings. Annot., 45 A.L.R.2d 1296, 1303 (1956).

**7.** Deposition, p. 29.

ment of Labor and Human Resources of the Commonwealth of Puerto Rico and to fellow employees.[8]

### CONCLUSION

Based on the foregoing, we find the defamation claims are not legally sufficient to defeat a motion for summary judgment and should be dismissed.

### SUMMARY JUDGMENT

In ruling on motions for summary judgment, the Court must look at the record in the light most favorable to the opposing party. The purpose of a summary judgment is to determine whether or not further exploration of the facts is needed, and it is the burden of the party opposing the motion to show that genuine issues of material fact remain in controversy. *Raskiewicz v. The Town of New Boston, et al.,* 754 F.2d 38 (1st Cir.1985).

A party opposing a summary judgment has the burden of presenting evidence to justify its position and cannot rest on the allegations in the pleadings. *Emery v. Merrimack Valley Wood Products, Inc.,* 701 F.2d 985, 991 (1st Cir.1983). Legal arguments by counsel in his memorandum of law are not sufficient to defeat a summary judgment request. *Transurface Carriers v. Ford Motor Co.,* 738 F.2d 42 (1st Cir.1984).

Accordingly, defendant's motion for summary judgment filed on September 19, 1984 in these consolidated actions is granted and the complaints in Civil Action Nos. 84–1502 and 84–1503 are hereby dismissed.

IT IS SO ORDERED.

8. Deposition, p. 37, and affidavit submitted with opposition to motion for summary judgment.