Manuel A. **BARALT,** Lizette Pena–Aviles, and their marital partnership, Juan Gonzalez–Perez, Monserrate Canabal–Duran, and their marital partnership, Plaintiffs

v.

**NATIONWIDE MUTUAL INSURANCE, CO.,** Nationwide Mutual Fire Insurance Co., Nationwide Life Insurance Co., Nationwide General Insurance Co., Nationwide Property and Casualty Insurance Co., Nationwide Group of Companies., and William P. De–Meno, Defendants

No. 95–2421 (PG).

United States District Court,
D. Puerto Rico.

Feb. 23, 2000.

James D. Noel–High, McConnell Valdes, San Juan, PR, for plaintiffs.

Arturo Diaz–Angueira, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for defendants.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

After a five day trial, the jury found that Defendants Nationwide Insurance Co., Nationwide Mutual Fire, Insurance Co., Nationwide Life Insurance Co., Nationwide General Insurance Co., Nationwide Property and Casualty Insurance Co., Nationwide Group of Companies., and William P. De–Meno ("Nationwide") discharged both Manuel A. Baralt and Juan González Pérez in violation of both the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621, et seq., and Act No. 100, P.R. Laws Ann. tit. 29, § 146, et seq. The jury also determined that Nationwide discharged Baralt and González without just cause and in violation of Act No. 80, P.R. Laws Ann. tit. 29, § 185a, et seq., awarded Plaintiffs Manuel A. Baralt, his wife Lizette Peña Avilés, Juan González Pérez, and his wife Monserrate Canabal Durán a total of $ 4,400,000.00.[1]

Defendants made several motions for judgment as a matter of law, one at the close of Plaintiffs' case and again at the close of evidence, which the Court took under advisement. After the jury verdict, Defendants also made a motion for directed verdict, which the Court denied. Defendants now renew their motion for judgment as a matter of law. Plaintiffs filed a motion in opposition to Defendants' Motion Requesting Judgment Notwithstanding the Verdict, or in the Alternative, Remittitur of the Damage and Back Pay Awards or the Celebration of a New Trial.[2]

The Court also has in front of it motions by Plaintiffs for Attorney's Fees (Dkt.55), for Double Indemnity under Act No. 100 (Dkt.56) and for Prejudgment Interest (Dkt.67). Defendants responded to Plaintiffs' motions in several motions of their own. (Dkts. 66 & 76)

## FACTS

The evidence, seen in the light most favorable to Plaintiffs, is as follows: Juan González Pérez ("González") worked for Nationwide for over 28 years. Manuel Baralt worked for Nationwide for over 24

---

1. The jury awarded $1,500,000.00 to González for compensatory damages and $400,000.00 to him in back pay. The jury also awarded González' wife, Monserrate Canabal Durán $500,000.00 in compensatory damages. Baralt was awarded $1,000,000.00 for compensatory damages by the jury as well as $500,000.00 for back pay. Baralt's wife, Lizette Peña Avilés was awarded $500,000.00 in compensatory damages.

2. Defendants have made a renewed motion for judgment as a matter of law. While the title judgment notwithstanding the verdict, or its Latin abbreviation, JNOV, standing short for judgment non obstante veredicto, is no longer used in F.R. Civ. P. 50, Courts are to consider such a mistake as "merely formal." After all, old habits die hard.

years. Nationwide fired Baralt on April 28, 1994 and fired González on May 10, 1994. Each was replaced by a younger employee. Each was escorted out of the Nationwide premises through the back door by security personnel.

Nationwide presented four reasons why González and Baralt were fired, and why age was not a factor. Nationwide first alleged that each knew of Mr. Enrique Lopez' son's use of a pool car.[3] Both employees admitted such, as did virtually every other employee Nationwide interviewed. It was no secret.

Second, Nationwide alleged that Baralt and González were involved in "irregularities" surrounding a salvage car-a British Sterling. Again, the misuse was performed by Enrique Lopez and again, many employees knew of the car and its situation. González merely drove the car from Lopez' home in Dorado back to Nationwide during business hours. Baralt knew of the car and its whereabouts. Beyond this, it is unclear what Nationwide is alleging he did wrong.[4]

Third, Nationwide discovered an insurance policy issued to Lopez' family for a Plymouth Sundance. The car was purchased in Cincinnati, Ohio. Lopez called González to tell him to fill out an application for him on the car. Lopez told González he was bringing the car to Puerto Rico and wanted it insured there. The application listed the principal driver as Lopez' wife, when in fact it was his son. The car also remained in Ohio. Several employees saw and worked on the policy besides González and ultimately it was not González' decision whether to issue the policy. After González and Baralt were fired, the policy was renewed by Nationwide.

Fourth, Nationwide alleged that both González and Baralt interfered with an investigation by a Nationwide investigator and intimidated several employees. Additionally, Nationwide alleged that Baralt and González breached an unwritten confidentiality understanding. The jury disbelieved Nationwide's allegations, and the Court cannot substitute its judgment for that of a jury's when, as here, the jury's finding is amply supported by facts.

## FED. R. CIV. P. 50–JUDGMENT AS A MATTER OF LAW

### I. STANDARD

■ Before the Court is Defendants' Renewal of Motion for Judgment as a Matter of Law under FED. R. CIV. P. 50(b). Rule 50(b) provides that a Rule 59 motion for a new trial may be joined with or in the alternative to the Renewal. The Court has the discretion to "allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law." FED. R. CIV. P. 50(b). Rule 50 only applies in cases tried to a jury with the power to return a binding verdict. *See* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2523 n. 1 (2d ed.1994) (citing *Schlitt v. Florida*, 749 F.2d 1482 (11th Cir.1985)).

Whether the evidence presented at trial will permit the Court to enter judgment as a matter of law is solely a question of law for the Court and the party seeking to overturn a jury verdict faces an uphill battle. *See Haschmann v. Time Warner Entertainment Co. L.P.*, 151 F.3d 591, 599 (7th Cir.1998). *See also Yesudian v. How-*

---

3. Lopez was the boss of González and Baralt. He ordered that his son be permitted to take the pool car home each night to prevent its theft or damage. The practice stopped when a fence was completed around Nationwide's property.

4. If knowledge were enough for dismissal, why were some employees spared while others dismissed. Such behavior is questionable.

Nationwide implies, without coming out and explicitly saying it, that González and Baralt's inaction is actionable. But this places the employee between a rock and a hard place; rat on your boss and risk being fired, say nothing and risk being fired. The jury was charged with drawing this line and the Court can see no reason to redraw it.

*ard Univ.*, 153 F.3d 731 (D.C.Cir.1998). The Court will not overturn the jury's verdict so long as there is evidence upon which the jury properly could find a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A trial judge may not upset the jury's verdict merely because he or she would have decided the case differently," *Coastal Fuels of P.R. v. Caribbean Petroleum*, 79 F.3d 182, 201 (1st Cir.1996), *cert. denied*, 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 214 (1996) (quoting *Velazquez v. Figueroa-Gomez*, 996 F.2d 425, 427 (1st Cir.1993), *cert. denied*, 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993)), for it is not what the judge believes but rather what the jury "could have found." *Ramos v. Davis & Geck, Inc.*, 167 F.3d 727, 734 (1st Cir.1999). In its review, the Court must view the evidence in the light most favorable to the non-moving party. *See Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943); *Cardona Jimenez v. Bancomercio de Puerto Rico*, 174 F.3d 36, 40 (1st Cir.1999); *Ramos v. Davis & Geck, Inc.*, 167 F.3d at 731.

A "non-moving party must submit more than a mere scintilla of evidence as to an issue on which it bears the ultimate burden of persuasion in order to resist or reverse the entry of judgment as a matter of law on that issue. *See Coyante v. Puerto Rico Ports Auth.*, 105 F.3d 17, 21 (1st Cir. 1997)." *Alvarez-Fonseca v. Pepsi Cola of P.R.*, 152 F.3d 17, 24 (1st Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1778, 143 L.Ed.2d 806 (1999). On the other hand, a "plaintiff need not and 'should not be required to produce "smoking-gun" evidence before prevailing in a discrimination suit. There are many veins of circumstantial evidence that may be mined by a plaintiff to this end ....' *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991)[, *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) ]." *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 635 (1st Cir. 1996), *cert. denied*, 520 U.S. 1276, 117 S.Ct. 2457, 138 L.Ed.2d 214 (1997). A funda-

mental principle to be followed is that there must be a minimum of judicial interference with the jury. 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 n. 14.

## II. ADEA CLAIM

The ADEA prohibits an employer from discharging an employee because of his age. In a wrongful discharge case, such as this, the plaintiff bears the ultimate burden of proving that he would not have been fired but for his age. *See Cardona Jimenez v. Bancomercio de P.R.*, 174 F.3d at 40 (citing *Serrano-Cruz v. DFI P.R. Inc.*, 109 F.3d 23, 25 (1st Cir.1997)). Without direct evidence of discriminatory animus, the *McDonnell Douglas* burden-shifting sequence controls. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cardona Jimenez v. Bancomercio de P.R.*, 174 F.3d at 40–41; *Alvarez-Fonseca v. Pepsi Cola of P.R.*, 152 F.3d at 24.

■■■ *McDonnell Douglas* directs the Court to follow a three step sequence for age discrimination cases. First, the plaintiff must present a *prima facie* age discrimination case. This modest burden requires a showing by the plaintiff that (1) he was a member of a protected age group, *i.e.*, he is 40 years old or older; (2) he was performing his job adequately; (3) he was fired; and (4) the employer had a continuing need for the same services, and/or he was replaced by a person with the same or similar qualifications as the plaintiff. *See Cardona Jimenez v. Bancomercio de P.R.*, 174 F.3d at 41. Once a plaintiff meets this burden, a presumption of discrimination attaches. *See Id.* The employer then must articulate a "legitimate, nondiscriminatory reason" for firing the employee. *Id.* If the employer sets forth a legitimate, nondiscriminatory reason the presumption of discrimination vanishes and the employee must prove that the reason is a sham *and* that the real reason for the firing is age. *See Id.* The

burden of persuasion remains with the employee at all times. *See Id.*

Defendants concede that Plaintiffs proved their *prima facie* case. Defendants presented its alleged non-discriminatory reasons for the dismissals of Baralt and González, in an attempt to satisfy phase two of the *McDonnell Douglas* sequence. Plaintiffs tried next to prove, and the jury believed, that Defendants alleged dismissal reasons were a sham. Looking at the facts in a light most favorable to Plaintiffs, the Court thus accepts the following to be true: (1) Plaintiffs made out a *prima facie* case; (2) Defendants presented its reasons for the dismissals; and (3) the reasons were a sham or not valid.

Defendants incorrectly state that a defendant need not have a legitimate reason for termination; "they don't have to be valid reasons, they just have to be non-discriminatory reasons." Tr. at 305. Defendants cannot fire an employee and go back and create a non-discriminatory reason to justify its actions. Worse yet, a defendant may not plan in advance to fire an employee while all the while dismissing him due to age. The key component is that an employer fired an employee due to age, but the reason articulated must be legitimate. The jury was entitled to find that Defendants' reasons were not valid or not legitimate.

█ If Defendants' reasons are legitimate or valid, the remaining issue under the *McDonnell Douglas* sequence is whether Plaintiffs provided enough evidence for the jury to find that age was the real reason why Nationwide fired Baralt and González. Baralt and González were allegedly fired because of "irregularities." But these "irregularities" were caused by Enrique Lopez, the boss of both Baralt and González (as well as the other three cabinet members Blanca Robles, Rafael González and Luis Flores Diepa). Defendants' own witness, a former cabinet member, testified that any adverse action against Lopez could cost a board member his or her job:

Q: So at no point did you personally inform [sic] anyone in Columbus, Ohio that Mr. Lopez was acting improperly by keeping in his house a salvage car?

A: Neither [sic] by me or any of the other cabinet members of the cabinet because it would [sic] have adversely affected our jobs.

Tr. at 335. The cabinet members followed the orders of their boss, Mr. Enrique Lopez, and simply had no authority to contradict Mr. Lopez' instructions. Tr. at 339. Nationwide attempted to pass Lopez' wrongdoing on to Baralt and González. The cabinet members all acting similarly and were treated differently. The jury performed their duty as fact finders and disbelieved the Defendants proffered reasons.

█ If the jury rejects the employers' reasons for dismissal as a pretext for age discrimination, the Court is not free to resurrect those same reasons for other purposes. *See Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1098 (11th Cir.1987). Furthermore, the same witness for Defendants testified that Nationwide had a national retirement plan to cut payroll throughout the entire country. *See* Dkt. 80, at 16; Tr. at 326–27.

Q: Isn't it a fact that the national retirement plan [of Nationwide] became a complement of Nationwide's efforts to cut the payroll in t[he] Puerto Rico operation?

A: I would say no bec[aus]e this retirement plan was implemented thro[u]ghout the nation.

Tr. at 326–27. The jury could have found that Nationwide had a retirement plan to cut payroll implemented throughout the nation; Nationwide headquarters fired Baralt and González without valid reasons; and that retirement plan was implemented to help or force older employees to retire.

"The jury heard both sides and the jury spoke. That is all there is to say about age discrimination liability in this case.

**38**

There were clearly two sides to this case. The jury believed [Baralt and González] and [their] evidence; it did not believe [Nationwide]." *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1146 (5th Cir.1991).

 An employee fired in violation of ADEA is entitled to back pay he or she would have earned from the date of the wrongful discharge until trial, less any severance amounts and mitigation. *See, e.g., Buchholz v. Symons Mfg. Co.*, 445 F.Supp. 706 (E.D.Wis.1978). The duty to mitigate means an employee must, with reasonable diligence, attempt to secure a comparable position. *See id.* Although some courts have allowed compensatory damages under ADEA, *see id.*, the general rule is they are not awarded without a finding of "willfulness" on the part of an employer. The Court expressly ruled that no willfulness was present in this case.

The jury awarded Baralt and González $900,000.00 as back pay under ADEA, a sum the Court affirms at this time. Therefore, for the reasons stated above, Defendants motion for judgment as a matter of law is DENIED and Plaintiffs' award for back pay under ADEA is upheld.

**III. ACT NO. 100 CLAIM**

There are significant differences in the burden of proof requirements under the ADEA and Act No. 100. As stated above, under the ADEA the plaintiff bears the ultimate burden of proving that he would not have been fired but for his age. *See Cardona Jimenez v. Bancomercio de P.R.*, 174 F.3d at 40 (citing *Serrano–Cruz v. DFI P.R. Inc.*, 109 F.3d at 25.) *McDonnell Douglas* shifts only the burden of production once a plaintiff establishes a *prima facie* case. Once the defendant produces a legitimate, nondiscriminatory reason the burden shifts back to the plaintiff. The burden of persuasion remains with the plaintiff at all times under the ADEA.

 The sequence under Act No. 100 differs in a slight, yet important, fashion. "Under Act No. 100 ... once the employee triggers the [Act No. 100]'s protections by showing that his discharge ... was not justified, the employee enjoys a presumption that he or she has been the victim of discrimination and the burdens of both production and persuasion shift to the employer." *Ramos v. Davis & Geck, Inc.*, 167 F.3d at 734 (citing *Alvarez–Fonseca v. Pepsi Cola of P.R.*, 152 F.3d at 27, in turn citing *Ibanez Benitez v. Molinos de P.R.*, 114 P.R. Off. Trans. 58 (1983)). Act No. 100 is thus friendlier to plaintiffs than the ADEA and an employer under Act No. 100 must prove by a preponderance of the evidence that the discharge was not motivated by a "discriminatory age animus." *Ramos v. Davis & Geck, Inc.*, 167 F.3d at 734; *Alvarez–Fonseca v. Pepsi Cola of P.R.*, 152 F.3d at 27.

 The same facts may support a finding under both Act No. 100 and the ADEA. The jury found Defendants violated Act No. 100 and awarded them $2,500,-00.00 in compensatory damages.[5] For the reasons stated above, Defendants motion for judgment as a matter of law is DENIED and the jury's award of $2,500,-000.00 is upheld.

**IV. ACT NO. 80 CLAIM**

 "There is no question that Act No. 80[, 29 L.P.R.A. § 185a,] is the exclusive remedy for wrongful discharge in Puerto Rico." *Weatherly v. International Paper Co.*, 648 F.Supp. 872, 875 (D.P.R.1986). *See also Prudential–Bache Secs., Inc. v. Tanner*, 72 F.3d 234, 239 (1st Cir.1995); *Vargas, et al. v. Royal Bank of Canada, et al.*, 604 F.Supp. 1036, 1039 (D.P.R.1985). Act No. 80 is a remedial statute that mandates payment to an employee when that employee is wrongfully discharged. *See*

5. Although the jury instructions were far from clear on damages, the it is a legal impossibility to give compensatory damages under the ADEA. Compensatory damages are only available under Act No. 100 in this case.

L.P.R.A. § 185a. Act No. 80 provides in part:

Every employee in commerce, industry or any other business or place of employment designated hereinafter as the establishment, in which he works for compensation of any kind, under contract without a fixed time, who is discharged from his employment without good cause shall be entitled to receive from his employer, in addition to the salary he may have earned:

(a) the salary corresponding to one month as indemnity;

(b) an additional progressive indemnity equivalent to one week for each year of service.

29 L.P.R.A. § 185a.

In enacting Act No. 80, the "legislature sought to strike a balance between the freedom of choice inherent to an employer and the social need to do away with arbitrary terminations of employment." *Vargas,* 604 F.Supp. at 1039 (citing *Secretario Del Trabajo v. I.T.T.,* 108 D.P.R. 536, 540–41, 1979 WL 59121 (1979), citing in turn a report prepared by the Civil Rights Commission, August of 1959). Act No. 80 provides for dismissal compensation for employees-at-will fired without "just cause."

Dismissal compensation is an important event of social justice due to man as a factor of production, insofar as he, as a worker, is a minor participant of the fruits of the enterprise, and is not entitled to the liquidation of dividends, benefits, or accrued interests in the worthy task of earning, with his effort, the daily bread he shares with his family and for whom the act of saving is a mere dream devoured by privation. When unemployment dooms a human being and his family to hunger or to indignity, we must be very demanding before depriving him of the protection he has gained through our social legislation. Only a very serious offense would justify the suspension of modest relief directed to support a family in the transition to a new job without becoming a burden for the State. There must be a very clear justification to dismiss him from his job without giving this minimal payment for his years of service which represent his only asset to the structure of production: his energy, his intellectual and physical capacity during his most fruitful years, in short, his health which time deteriorates.

*Secretario Del Trabajo v. I.T.T.,* 8 P.R. Off. Trans. at 573–74.

" 'Absent an express contract to the contrary, an employee hired for an indefinite term is terminable at the will of the employer without notice.' " *Hopgood, et al. v. Merrill Lynch, Pierce, Fenner & Smith, et al.,* 839 F.Supp. 98, 109–110 (D.P.R.1993), *aff'd,* 36 F.3d 1089 (1st Cir. 1994) (quoting *Weatherly v. International Paper Co.,* 648 F.Supp. at 875). Puerto Rico courts have not recognized a right for at-will employees to sue for wrongful discharge outside of the remedies given under Act No. 80 for discharge without cause. *See Hopgood,* 839 F.Supp. at 109–110; *Alvarado Morales v. Digital Equipment Corp.,* 669 F.Supp. 1173, 1184 (D.P.R.1987), *aff'd,* 843 F.2d 613 (1st Cir. 1988). Because Baralt and González were at-will employees, any claim for wrongful discharge (excluding age discrimination, etc.) is covered under Act No. 80, the exclusive remedy under Puerto Rico law. *Id.* at 1183–84.

Section 185b defines "just cause" as:

(a) That the worker indulges in a pattern of improper or disorderly conduct.

(b) The attitude of the employee of not performing his work in an efficient manner; or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.

(c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.

(d) Full, temporary or partial closing of the operations of the establishment.

(e) Technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

(f) Reduction in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge. 29 L.P.R.A. § 185b. However, § 185b advises that a "discharge made by the mere whim of an employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause." *Id.*

 Whether Baralt and González were fired over single incidents or patterns of behavior shapes the Court's decision-making process. As the terms "pattern," "performing," and "repeated" infer, Act No. 80 does not encourage dismissal as the penalty for a first offense. *See Secretario Del Trabajo,* 8 P.R. Off. Trans. 568, 542–43 (1979). However, "dismissal for the first or single offense, when the intensity of the offense requires it in order to protect the good operation of the enterprise and the safety of its employees," is not out of the question. *Id. See also Vargas,* 604 F.Supp. at 1040. The Supreme Court of Puerto Rico has also held that the incompetence and failure of a supervisor to control *situations* in the workplace can rise to the level of "just cause." *Narvaez v. The Chase Manhattan Bank,* 120 D.P.R. 731 (1988).

Here, the jury found for Plaintiffs under Act No. 80.[6] As discussed above, the jury had the responsibility to weigh and judge the evidence and it is not for this Court to re-weigh or re-judge these issues unless the jury was biased or other impediments occurred to have prevented a fair, impartial trial. Because the trial was fair, and

no showing of any bias was presented by Defendants, and for the reasons stated above, Defendants motion for judgment as a matter of law is DENIED.

## FED. R. CIV. P. 59 REMITTITUR

 The Court has the discretion to order a new trial or a new trial limited to the issue of damages if it finds the jury award excessive. *See* FED. R. CIV. P. 59. However, the Court is not free to set aside the jury's verdict merely because it might have awarded a different amount of damages:

the Court has considered that although the question of excessiveness of a jury award falls squarely within the discretionary powers of this Court, the Court cannot arbitrarily substitute its judgment for that of the jury. *Bryant v. Mathis,* [ ] 278 F.2d 19 [(D.C.Cir.1960)]. More so, when as here, the amount awarded includes unspecified compensation for pain and suffering. *Rivera v. Rederi A/B Nordstjernan,* 456 F.2d 970 (1st Cir.1972)[, *cert. denied,* 409 U.S. 876, 93 S.Ct. 124, 34 L.Ed.2d 128 (1972) ]. Where damages are unliquidated and there can be no fixed measure of mathematical certainty, this Court would be reluctant to overturn a jury award even if it would have awarded less had the case been tried without a jury. *Werthan Bag Corp. v. Agnew,* 202 F.2d 119 (6th Cir.1953); *Devlin v. Safeway Stores, Inc.,* 235 F.Supp. 882 (D.C.N.Y.1964).

The profound insight and discernment generally displayed by jurors as to the proper measure of damages for personal injuries cannot be treated lightly. Absent a showing that the jury was improperly motivated by passion, prejudice or sympathy, or a showing that the jury's award was so grossly excessive and unreasonable so as to "shock the conscience," the assessment of damages

---

**6.** There can be no award under both Act No. 100 and Act No. 80 if the Act No. 100 award exceeds the Act No. 80 award. In that case, the latter is excluded by the former.

made by a jury cannot be substituted by the Court.

*See Cabassa v. American Union Transp.,* 58 F.R.D. 200, 204 (D.P.R.1972) (Toledo, J.). In the event the Court's conscience is "shocked," the Court may reduce the award to the highest amount the jury might have awarded. *See Conjugal Partnership v. Conjugal Partnership,* 798 F.Supp. 892 (D.P.R.1992), *aff'd by Jones & Jones v. Pineda & Pineda,* 22 F.3d 391 (1st Cir.1994).

■ Here, there can be no such stupefaction as to the awards for Baralt and González; there was ample evidence from which the jury could find damages in the stated amounts. However, the Court agrees with the Defendants that Plaintiffs Peña and Canabal's awards are grossly exaggerated *given the lack of evidence introduced at trial.* After a thorough review of the record, the Court reduces Plaintiffs Peña and Canabal's awards to $100,000.00 each under Rule 59. Defendants' motion for a new trial is likewise DENIED.

## ATTORNEY'S FEES & DOUBLE INDEMNITY UNDER ACT NO. 100

### I. ATTORNEY'S FEES

■ Plaintiffs requested attorney's fees be awarded them under Act No. 100. (Dkt.55) Both Act No. 100 and ADEA allow a prevailing plaintiff to recover attorney's fees. Plaintiffs are a prevailing party in this case. *See Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Plaintiffs have the burden of "establishing an accurate and reliable basis for an award of attorney's fees, *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40[ ] (1983), and [ ] the

district court has wide discretion in making a fee award determination." *Philipp v. ANR Freight Sys., Inc.,* 61 F.3d 669, 675 (8th Cir.1995), *reh'g en banc denied,* 1995 U.S.App. LEXIS 28274 (8th Cir. Oct. 11, 1995).

■ The Supreme Court of Puerto Rico has determined that "ordinarily, the amount that the attorney of a prevailing worker may receive under an Act No. 100 claim shall be twenty-five (25%) of the base compensation awarded to the worker." *Lopez–Vicil v. ITT Intermedia, Inc.,* 97 J.T.S. 104, 1250, 1254 (1997). "In other words, the reward is 25% of the compensatory damages award before the award is doubled." *Ramos, et al. v. Davis & Geck, et al.,* 976 F.Supp. 108, 109 (D.P.R.1997), *aff'd by* 167 F.3d 727 (1st Cir.1999) (citing *Lopez Vicil v. ITT Intermedia. Inc.,* 97 J.T.S. 104, at 1250 (June 26, 1997)). On the other hand, the Lodestar method in determining attorney's fees in generally used under ADEA.[7]

Beyond acknowledging that Plaintiffs are entitled to attorney's fees in this case, the Court will refrain from deciding the exact amount due to them until after Plaintiffs have turned in clear, accurate and reliable records. At that time the Court may award attorney's fees based upon Act No. 100's 25% suggestion, ADEA's lodestar method, or a combination of the two.

### II. DOUBLE INDEMNITY

■ Plaintiffs also requested the grant of double damages under Act No. 100. *See* 29 L.P.R.A. § 146(a); (Dkt.56); *Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 724–25 (1st Cir.1994). As the doubling of the award is punitive in nature, it has been held that there is no conflict in doubling the award. *See Sanchez,* 37 F.3d at 725.

---

**7.** In computing attorney's fees, the Court may consider: (1) the time and labor required, (2) the novelty and difficulty of questions, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorney because of his acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) the amounts involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) the awards in other similar cases. Of course, this list not exclusive.

The doubling of base compensatory damages under Act No. 100 is not discretionary. Therefore, the Court orders the base compensatory damages under Act No. 100 be doubled. As such, Plaintiff Baralt is entitled to $2,000,000.00 under Act No. 100 and $500,000.00 back-pay under ADEA. Plaintiff González is entitled to $2,500,-000.00 under Act No. 100, as well as $400,-000.00 back pay award under ADEA.

## PREJUDGMENT INTEREST

Plaintiffs have requested an award of prejudgment interest. An award of prejudgment interest is within the discretion of the court. *See de Leon Lopez v. Corporacion Insular de Seguros, et al.,* 742 F.Supp. 44, 48 (D.P.R.1990), *aff'd,* 931 F.2d 116 (1st Cir.1991). *See also Newell Puerto Rico, Ltd. v. Rubbermaid Inc.,* 20 F.3d 15 (1st Cir.1994); *Philipp v. ANR Freight Sys., Inc.,* 61 F.3d at 675–76. Puerto Rico Rule of Civil Procedure 44.3(b) allows for prejudgment interest if a defendant acts rashly, more commonly referred to as obstinate, during the litigation. *See Ramos v. Davis & Geck,* 167 F.3d at 734 (citing *Dopp v. Pritzker,* 38 F.3d 1239, 1252 (1st Cir.1994), in turn citing *De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116, 126–27 (1st Cir.1991)). In the case of damage awards, a plaintiff is entitled to legal interest on the sum awarded from the date of filing of the complaint through that of the judgment. *See* P.R.R. Civ. P. 44.3(b).

The Court does not believe that Defendants acting obstinately during trial. At the end of trial the Court congratulated each side for a well-tried case. *See Ramos v. Davis & Geck,* 167 F.3d at 734. Moreover, at the close of Plaintiffs' case-in-chief, Plaintiffs abandoned their libel and slander claim. If Plaintiffs had not abandoned the claim, the Court would have, for Plaintiffs introduced no evidence on the subject. The Court declines the invitation by Plaintiff Pot to call Defendant Kettle black and denies Plaintiffs' request for prejudgment interest.

## CONCLUSION

For the reasons stated above, Defendants motion for judgment as a matter of law is DENIED. Furthermore:

(1) The Court upholds the jury's award of $900,000.00 for back-pay under ADEA.

(2) The Court upholds the $2,500,000.00 award under Act No. 100.

(3) Pursuant to Act No. 100 claim, the compensatory damages award is hereby doubled to $5,000,000.00.

(4) The Court reduces Plaintiff Lizette Peña–Avilés' and Plaintiff Monserrate Canabal–Durán's awards to $100,000.00.

(5) The jury's verdict regarding Act No. 80 is upheld.

(6) Defendants' request for a new trial is DENIED.

(7) Plaintiffs' motion for prejudgment interest is DENIED.

The Court will reserve judgment on the amount of an attorney's fees award pending the introduction of Plaintiffs of accurate and reliable information regarding that subject.

**IT IS SO ORDERED.**